UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JIANJUN CHEN, et al.                                                                  Docket No.: 16-CV-5735 (GHW)

                             **Plaintiffs,**

      -against-

**2425 BROADWAY CHAO RESTAURANT, LLC, et al.**

                             **Defendants.**
-------------------------------------------------------------------X

**DEFENDANTS 2425 BROADWAY LLC AND TSU YUE WANG'S MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION PURSUANT TO FED. R. CIV. P. 56
FOR SUMMARY JUDGMENT**

*Of counsel*
Joseph M. Labuda
Matthew A. Brown

**MILMAN LABUDA LAW GROUP PLLC**
*    \*    \*    \*    \**
**3000 MARCUS AVE., SUITE 3W8
LAKE SUCCESS, NY 10042
(516) 328-8899**

1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

PROCEDURAL HISTORY ........................................................................................................ 2

FACTS ......................................................................................................................................... 4

RULE 56 STANDARD ............................................................................................................... 9

ARGUMENT ............................................................................................................................... 9

POINT I
   DEFENDANTS 2425 LLC AND T.Y. WANG ARE NOT LIABLE TO PLAINTIFFS
   FOR ANY CLAIMS OF UNPAID WAGES ........................................................................ 9

CONCLUSION ......................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505,
    91 L. Ed. 2d 202 (1986) .................................................................................................. 9, 10
Barfield v. N.Y. City Health & Hosps Corp., 537 F.3d 132, (2d Cir. 2007) ................................ 16
Camara v. Kenner, 2018 U.S. Dist. LEXIS 54039, *19 (S.D.N.Y. Mar. 29, 2018) ..................... 14
Celotex Corp. v. Catrett, 477 U.S. 317, (1986) ........................................................................... 12
Chao v. Vidtape, Inc., 196 F. Supp. 2d 281, (E.D.N.Y. Apr. 22, 2002) ....................................... 15
Chen v. DG&S, NY, Inc. 2016 U.S. Dist. LEXIS 135285, *7-10 (S.D.N.Y. Sept. 29, 2016) ..... 15
Chertkova v. Conn. Gen'l Life Ins. Co., 92 F.3d 81, (2d Cir. 1996) ........................................... 10
Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, (2d Cir. 1991) ........................................... 12
Davis v. Ching Yi Cheng, 2017 U.S. Dist. LEXIS 212738, *19 (E.D.N.Y. Dec. 28, 2017) ........ 14
Estate of Hamilton v. City of New York, 627 F.3d 50, (2d Cir. 2010) ....................................... 11
Fraser v. MTA Long Island Rail Rd., 2018 U.S. Dist. LEXIS 55422, *38
(E.D.N.Y. Mar. 31, 2018) ............................................................................................................ 13
G.I. Home Developing Corp. v. Weis, 499 F. App'x. 87, (2d Cir. 2012) .................................... 13
Garcia v. JonJon Deli Grocery Corp., 2015 U.S. Dist. LEXIS 108264, *3
(S.D.N.Y. Aug. 11, 2015) ............................................................................................................ 15
Grochowski, v. Phoenix Constr., 318 F.3d 80, (2d Cir. 2003) .................................................... 17
Herman v. RSR Sec. Services Ltd., 172 F.3d 132 (2d Cir. 1999) ................................................ 11
Juarez v. 449 Rest., Inc., 29 F. Supp. 3d 363 (S.D.N.Y. Jul. 2, 2014) ......................................... 16
Murphy v. Lajaunie, 2016 U.S. Dist. LEXIS 37137, 2016 WL 1192689, at *7
    (S.D.N.Y. Mar. 22, 2016) ......................................................................................................... 12
Viola v. Philips Med. Sys. of N Am., 42 F.3d 712, (2nd Cir. 1994) .............................................. 9
Yu Y. Ho v. Sim Enterprises, Inc., 2014 U.S. Dist. LEXIS 66408, 2014 WL 1998237,
    at *10 (S.D.N.Y. 2014). ............................................................................................................ 11

**Statutes**

29 U.S.C. § 255 ............................................................................................................................ 14
Fed. R. Civ. P. 56 ....................................................................................................................... 2, 9

**PRELIMINARY STATEMENT**

Defendants 2425 Broadway LLC ("2425 LLC") and Tsu Yue Wang ("T.Y. Wang") are not liable to Plaintiffs for their wage claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("N.Y. Lab. Law") for several reasons. First, during the time that C.C. Wang ("C.C. Wang") owned Ollie's to Go, C.C. Wang was Plaintiffs' employer, not T.Y. Wang. Second, later when 2425 LLC and T.Y. Wang ("T.Y. Wang Defendants") owned and operated Ollie's to Go, Plaintiffs admit they were paid properly. Either way, 2425 LLC and T.Y. Wang are not liable to Plaintiffs under the FLSA and N.Y. Lab. Law.

As noted above, C.C. Wang and his company 2425 Broadway Chao Restaurant, LLC ("2425 Chao"), owned and operated Ollie's to Go, where Plaintiffs worked, from its inception in July 2010 to May 17, 2015 ("C.C. Wang Time Period").[1] C.C. Wang and his day-to-day manager, Cindy Cheah ("Cindy"), controlled the terms and conditions of Plaintiffs' employment (e.g. hired, fired, disciplined, set wage rates, set schedules and directed job duties). In contrast, during the C.C. Wang Time Period, T.Y. Wang Defendants were solely involved with Ollie's to Go as the sub-landlord and food consultant without exercising any control over Plaintiffs' employment. Thus, T.Y. Wang Defendants were not Plaintiffs' employers during the C.C. Wang Time period.[2]

---

[1] Plaintiffs concede that 2425 LLC was not liable for any unpaid wages up to May 17, 2015 and only allege that 2425 LLC is liable for any claims which arose on or after May 18, 2015. (Dkt. No. 121, ¶¶s 39-43).

[2] Moreover, any claims against WMK 89th Street LLC d/b/a Trattoria Di Vino ("Trattori Di Vino") as they relate to T.Y. Wang Defendants must be dismissed under Plaintiffs' joint employer theory. There is absolutely no evidence of any interrelation of operations, centralized control of labor relations, common management, common ownership or common financial control of the two (2) entities at any point in time. In fact, Plaintiffs have presented no evidence that Trattoria Di Vino was a joint employer and were solely directed by either C.C. Wang, Cindy or Plaintiff Allen Chun Kang, the head delivery person, to make deliveries for Trattoria Di Vino while simultaneously delivering orders for Ollie's to Go. Moreover, Trattoria Di Vino closed for business at the beginning of 2012, more than three

Further, in May 2015, C.C. Wang left the United States for personal reasons, abandoned Ollie's to Go and surrendered 2425 Chao's sub-lease back to T.Y. Wang's company, 2425 LLC. Thereafter, T.Y. Wang Defendants began operating Ollie's to Go on May 18, 2015 ("T.Y. Wang Time Period"), hiring new managers and employees. Some employees who previously worked at Ollie's to Go (including some Plaintiffs), were re-hired and completed new-hire paperwork. By their own admission, Plaintiffs who worked at Ollie's to Go during the T.Y. Wang Time Period were properly paid all wages. Accordingly, T.Y. Wang Defendants are not liable to for any claims of unpaid wages.

Based on the above, Defendants 2425 LLC and T.Y. Wang respectfully submit this memorandum of law in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56 (a) dismissing all claims against 2425 LLC and T.Y. Wang; and (b) granting such other relief as the Court may deem just and proper.

## PROCEDURAL HISTORY

Plaintiffs Jianjun Chen ("Chen"), Qing Pu ("Pu"), Youchun Zheng ("Zheng"), Allen Chun Kang ("Kang"), Minzhong Duan ("Duan"), Chee Kiang Foo ("Foo"), Jianshe Wang ("J. Wang"), Guolong Fu ("Fu"), Guangzheng Sun ("Sun"), Genxiang Zhang ("Zhang"), Gengshen Zhao ("Zhao"), Jianxin Feng ("Feng") and Qun Wan ("Wan") filed a Complaint against 2425 Chao, Trattoria Di Vino, T.Y. Wang, "John" Wang, Cho Kam Sze ("Sze"), Cindy "Doe", Anthony J. Mazzola ("Mazzola"), Victor Kasner ("Kasner") and Kevin Garcia ("Garcia") alleging, *inter alia*, that they were not paid all wages owed to them pursuant to the FLSA and

---

(3) years before the Complaint was filed on July 20, 2016. After that time, there is absolutely no evidence that Trattoria Di Vino had any relationship with 2425 Chao.

Additionally, Minzhong Duan's claims should be dismissed since he admitted he was paid for all hours worked during his entire period of employment in 2010.

2

N.Y. Lab. Law in the United States District Court, Southern District of New York, on July 20, 2016. (Dkt. No. 1). In response to the Complaint, T.Y. Wang filed a Motion to Dismiss the Complaint on November 14, 2016. (Dkt. Nos. 51-53).

Thereafter, Plaintiffs filed the First Amended Complaint on December 3, 2016, adding in additional allegations regarding T.Y. Wang's alleged "operational control" over their employment and removing certain causes of action, in whole or in part. (Dkt. No. 56). T.Y. Wang filed a Motion to Dismiss the First Amended Compliant. (Dkt. Nos. 61-63, 66-68). On June 15, 2017, the Court issued an order, granting in part, and denying in part, the Motion to Dismiss the First Amended Complaint. (Dkt. No. 69).

Plaintiffs filed a Second Amended Complaint on July 14, 2017, accounting for issues addressed in the Court's June 15, 2017 order, and *inter alia,* amending the caption and allegations to substitute C.C. Wang in place of "John" Wang and Cindy in place of "Cindy" Doe. (Dkt. No. 79).

Eventually, Weiting Zhao ("W. Zhao") filed a consent to join the FLSA claims on November 13, 2017. (Dkt. No. 101). During discovery, Plaintiffs, with leave of the Court, also filed a Third Amended Complaint on December 11, 2017, adding 2425 LLC as a Defendant and alleging that it only employed Plaintiffs' employed on or after May 18, 2015. (Dkt. No. 121). The allegations in the Third Amended Complaint make clear that Plaintiffs do not seek to hold 2425 LLC liable for any claims that arose prior to May 18, 2015 (either as a joint employer or successor). (Dkt. No. 121, ¶¶s 39-43).

On December 26, 2017, the Court dismissed Foo's claims without prejudice pursuant to Rule 41(a)(1)(A)(ii). (Dkt. No. 129). On February 20, 2017, the Court dismissed Sun's claims

without prejudice pursuant to Rule 41(a)(1)(A)(ii). (Dkt. No. 135). On March 29, 2018, the Court dismissed W. Zhao's claims without prejudice pursuant to Rule 41(a)(1)(A)(ii). (Dkt. No. 150).

## FACTS

### A. 2425 LLC Leased 2425 Broadway & Operated Haku At the Premises

T.Y. Wang is the sole owner of 2425 LLC. (SOF ¶ 1). In 2003, 2425 LLC leased the premises at 2425 Broadway through 2019 and opened Haku, a Japanese restaurant in or around 2006 or 2008. (SOF ¶ 2). In 2009, Haku closed due to a downturn in business. (SOF ¶ 3).

### B. Ownership of 2425 Chao, Lease of 2425 Broadway and Preparation to Open Ollie's to Go

After Haku closed, C.C. Wang approached T.Y. Wang about renting the space to open his own restaurant. (SOF ¶ 5). On March 8, 2010, C.C. Wang, on behalf of 2425 Chao, entered into a sublease with T.Y. Wang's 2425 LLC. (SOF ¶ 6).[3] Subsequently, on July 1, 2010, 2425 Chao entered into a consulting agreement with 2425 LLC. (SOF ¶¶s 7, 32-33). Pursuant to that consulting agreement, 2425 Chao agreed to pay 4% of net sales in exchange for, *inter alia*, use of the "Ollie's to Go" logo and consulting services. (SOF ¶ 7, 32-33). 2425 LLC provided the food consulting services on the menu for Ollie's to Go. (SOF ¶ 34).

In the process of incorporating 2425 Chao and opening Ollie's to Go, C.C. Wang filed articles of incorporation. (SOF ¶ 9). He also applied for and obtained an IRS employer tax identification number, certificate of occupancy, certificate of taxation, certificate of assumed name and other corporate documentation. (SOF ¶ 9). In addition, C.C. Wang obtained a bank loan and hired contractors to renovate the restaurant. (SOF ¶¶s 10-11). C.C. Wang also hired Cindy as the restaurant's manager. (SOF ¶ 12).

---

[3] C.C. Wang had 95% ownership in 2425 Chao, while Chichu Yu has 5% ownership in the company. (SOF ¶ 4).

Prior to opening Ollie's to Go, C.C. Wang, with the help of Cindy and his accountant, contracted with a credit card merchant for Ollie's to Go to process customer payments, set up utilities accounts for the restaurant, set up bank accounts for the restaurant, and ensured that the health department inspected the restaurant. (SOF ¶ 13). C.C. Wang also staffed Ollie's to Go by placing advertisements in newspapers and hiring employees from staffing agencies. (SOF ¶ 14). T.Y. Wang was not involved in these activities. (SOF ¶¶s 13, 33-38, 42).

### C. Ownership & Operation of Ollie's to Go From July 2010 to May 17, 2015

2425 Chao operated Ollie's to Go during the C.C. Wang Time Period (i.e. July 2010 to May 17, 2015). (SOF ¶¶s 8, 15). For that entire period of time, Cindy generally worked six (6) days per week, while C.C. Wang generally worked four (4) to five (5) days per week. (SOF ¶¶s 18-19). When either C.C. Wang or Cindy was not working, the other was present to oversee the management of the restaurant. (SOF ¶¶s 20-21).

In fact, C.C. Wang testified that only he and/or Cindy had control over Plaintiffs' employment during the C.C. Wang Time Period. Specifically, only C.C. Wang and Cindy directed employee's job duties on a daily basis and had authority to interview, hire, fire and discipline employees. (SOF ¶¶s 22-24, 26). Furthermore, only C.C. Wang and Cindy had authority to set employee schedules and wage rates. (SOF ¶¶s 27-28). In reality, C.C. Wang set delivery persons' wage rates and was responsible for setting up work rules and policies for Ollie's to Go's employees. (SOF ¶¶s 25, 28). Additionally, C.C. Wang personally calculated the hours worked by employees and provided the information to the restaurant's accountant in order to process payroll on a weekly basis. (SOF ¶ 29). Only C.C. Wang and Chichu Yu had authority to authorize payment of wages and sign payroll checks. (SOF ¶ 31). Finally, C.C. Wang

5

maintained the restaurant's employment records including, but not limited to, payroll records, employee applications and other tax forms. (SOF ¶ 30).[4]

### D. **Plaintiffs' Employment During the C.C. Wang Time Period**[5]

Plaintiffs were all employed as delivery persons at Ollie's to Go. (SOF ¶¶s 44, 56, 66, 75, 86, 93, 107, 121, 140, 152, 162). Plaintiffs and C.C. Wang (as outlined above) readily admit that during the C.C. Wang Time Period, C.C. Wang and/or Cindy, not T.Y. Wang, controlled the terms and conditions of their employment.

Specifically, Plaintiffs were interviewed, hired and fired by C.C. Wang or Cindy. (SOF ¶¶s 45, 51, 57, 62, 67, 71, 76, 87, 94, 123, 142, 143, 154, 164).[6] Additionally, Plaintiffs' wage rates were explained and schedules were set by C.C. Wang or Cindy. (SOF ¶¶s 46, 49, 58, 68-69, 78, 88, 95, 125, 142, 154, 165-167, 172). Cindy and/or C.C. Wang also directed Plaintiffs when to arrive and punch in at the restaurant. (SOF ¶ 60, 103, 133, 145, 158). Furthermore, C.C. Wang and/or Cindy gave Plaintiffs their paychecks on a weekly basis. (SOF ¶¶s 47, 59, 69, 89, 116, 127, 155, 173). In addition, C.C. Wang, and/or Cindy oversaw and directed Plaintiffs' job duties. (SOF ¶¶s 22-24, 49, 61, 69-70, 79-81, 90, 100-101, 114-115, 1290-130, 132, 146-147, 157, 169-

---

[4] During the C.C. Wang Time Period, C.C. Wang also signed all of 2425 Chao's tax returns. (SOF ¶ 16).

[5] On the other hand, Trattoria Di Vino was owned by T.Y. Wang, Kasner and Mazzola. (SOF ¶ 198). Mazzola, acted as the manager of Trattoria Di Vino. (SOF ¶ 202). Garcia was not an owner, but the chef at Trattoria Di Vino. (SOF ¶ 199). During the period that it was open for business, Trattoria Di Vino did not employ delivery personnel. (SOF ¶ 200). After Ollie's to Go opened for business, Mazzola approached C.C. Wang about utilizing delivery personnel to delivery orders for Trattoria Di Vino. (SOF ¶ 202).

Only Plaintiffs Chen, Pu, Zheng, Kang, Duan, J. Wang, Fu, Zhang and Zhao delivered orders for Trattoria Di Vino upon direction from C.C. Wang, Cindy and/or Kang. (SOF ¶¶s 203-204). Specifically, Trattoria Di Vino's employees prepared and packaged delivery orders and brought them to Ollie's to Go in order to be delivered based on a rotation system amongst the delivery personnel. (SOF ¶ 205). These deliveries were made during the employees' working hours at Ollie's to Go for which they were punched in and paid. (SOF ¶ 207). After completing the deliveries, delivery persons returned to Trattoria Di Vino only to submit payment receipts for the orders, kept the tips paid from customers and otherwise had no interaction with Trattoria Di Vino, its employees, managers and/or owners. (SOF ¶ 206). The delivery arrangement between Trattoria Di Vino and Ollie's to Go lasted for less than one (1) year because Trattoria Di Vino closed for business in early 2012. (SOF ¶¶s 201, 208).

[6] Duan, Feng and Wan quit their employment during the C.C. Wang Time Period. (SOF ¶¶s 92, 161, 178).

6

170). Plaintiffs otherwise understood that C.C. Wang and Cindy were the managers with authority to discipline and fire. (SOF ¶¶s 96-97, 112, 131, 144, 156, 168, 171). Lastly, C.C. Wang solely maintained employee records for Ollie's to Go during the C.C. Wang Time Period. (SOF ¶ 30).[7]

### E. TY Wang Was a Consultant to 2425 Chao During the C.C. Wang Time Period

In contrast to C.C. Wang and Cindy, during the C.C. Wang Time Period T.Y. Wang provided food consulting services on a limited basis to Ollie's to Go pursuant to the July 1, 2010 agreement between 2425 Chao and 2425 LLC. (SOF ¶¶s 32-43). As part of the agreement, T.Y. Wang consulted with Ollie's to Go regarding the necessary documentation required to open the restaurant. (SOF ¶ 34). In addition, T.Y. Wang visited Ollie's to Go in order to taste and advise the kitchen staff regarding various menu items. (SOF ¶¶s 33, 34, 42). However, T.Y. Wang did not consult on or have any role or authority related to (a) hiring, firing or disciplining employees, (b) setting employee wage rates and schedules, (c) directing employees to perform work, or (d) the management of employees at Ollie's to Go, including Plaintiffs. (SOF ¶ 36-39, 43).

### F. Plaintiffs Have No Knowledge As To T.Y. Wang's Relationship With Ollie's to Go Prior to May 18, 2015

Plaintiffs' deposition testimony establishes that T.Y. Wang was not their employer during the C.C. Wang Time Period. Although Plaintiffs observed T.Y. Wang at Ollie's to Go during the C.C. Wang Time Period, they admit that T.Y. Wang never directed them to perform work. (SOF ¶¶s 52-55, 63-65, 73-74, 82-84, 91, 105, 118-119, 135-137, 148-149, 159-160, 174-176). In fact, Plaintiffs either never spoke or only exchanged greetings with T.Y. Wang. (SOF ¶ 54, 65, 73, 83, 91, 118, 137, 148, ,159, 175). Plaintiffs otherwise only observed T.Y. Wang tasting dishes,

---

[7] Certain Plaintiffs also admit that Plaintiff Allen Chun Kang, the head delivery person, performed these duties with respect to their employment (e.g. referring for hire, hiring, firing, setting schedules, explaining wage rates and directing job duties). (SOF ¶ 48, 50, 67, 90, 98-99, 108-111, 114-115, 120, 122, 126, 128, 141, 163).

7

helping kitchen staff or talking with C.C. Wang, Cindy and/or the chef, but did not observe him perform other activities at Ollie's to Go. (SOF ¶ 53, 63, 74, 82, 91, 105, 119, 136, 149, 174, 176). Moreover, Plaintiffs are unaware of the substance of any conversations between T.Y. Wang and owners, managers or employees of Ollie's to Go's. (SOF ¶ 65, 83, 105, 174). The only basis for Plaintiffs' belief that T.Y. Wang owned Ollie's to Go during the C.C. Wang Time Period was that other employees stated he was the owner and/or referred to him as "Boss." (SOF ¶¶s 72, 104, 138, 150, 177).

### G. **T.Y. Wang & 2425 LLC Operated Ollie's to Go Starting on May 18, 2015 and Paid Plaintiffs Properly**[8]

Eventually, C.C. Wang left the United States for personal reasons. (SOF ¶ 179). Upon leaving, he surrendered 2425 Chao's sub-lease back to 2425 LLC. (SOF ¶¶s 179-180). Thereafter, 2425 LLC began operating Ollie's to Go on May 18, 2015, hiring new managers and employees. (SOF ¶¶s 179, 181). Some employees who previously worked at Ollie's to Go (including certain Plaintiffs) were hired to work for 2425 LLC and were required to complete new-hire paperwork. (SOF ¶¶s 186, 194). From May 18, 2015, any Plaintiffs who worked at Ollie's to Go were paid properly. (SOF ¶¶s 186-192, 195-196).

Specifically, Kang and Zhang admitted punching in and out for all of their hours worked and were paid for all such hours when employed by T.Y. Wang Defendants. (SOF ¶¶s 187, 191). J. Wang also acknowledged that he and other delivery workers were paid for all of their hours worked during that time.[9] (SOF ¶¶s 188-190). Similarly, Zhao testified that he had a valid claim

---

[8] Similarly, Duan admits that he was paid for all of his hours worked during his entire period of employment at Ollie's to Go from July until November 2010. (SOF ¶ 197).

[9] More precisely, J. Wang testified that to his knowledge all delivery persons, including him, were paid properly starting in July 2014.

8

for unpaid wages from 2010 through 2014, and that he was otherwise paid for all of his hours worked. (SOF ¶¶s 192, 195-196).

## RULE 56 STANDARD

Summary judgment is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. See Viola v. Philips Med. Sys. of N Am., 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material: "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. See Chertkova v. Conn. Gen'l Life Ins. Co., 92 F.3d 81, 86 (2d Cir. 1996) citing Fed. R. Civ. P. 56(c).

## ARGUMENT

### POINT I
### DEFENDANTS 2425 LLC AND T.Y. WANG ARE NOT LIABLE TO PLAINTIFFS FOR ANY CLAIMS OF UNPAID WAGES

**A. 2425 LLC and T.Y. Wang Were Not Plaintiffs' Employer During the C.C. Wang Time Period**

During the C.C. Wang Time Period, July 2010 to May 17, 2015, C.C. Wang and his company, 2425 Chao, operated Ollie's to Go and undeniably employed Plaintiffs (e.g. hired, fired, disciplined, set wages and schedules, directed job duties and maintained employment

9

records). In contrast, T.Y. Wang only consulted with Ollie's to Go over food items and lacked the necessary power and control over Plaintiffs to be considered an employer under the FLSA and N.Y. Lab. Law during the C.C. Wang Time Period.

The general rule is that liability under the FLSA extends only to "employer[s]." 29 U.S.C. § 216(b); see Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). To determine whether an individual is an "employer," the Second Circuit utilizes the economic realities test which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Irizarry v. Catsimatidis, 722 F.3d 99, 104-05 (2d Cir. 2013).[10]

The burden to establish a defendant's liability as an employer under the FLSA and N.Y. Lab. Law rests with plaintiffs. See Estate of Hamilton v. City of New York, 627 F.3d 50, 57 (2d Cir. 2010); Murphy v. Lajaunie, 2016 U.S. Dist. LEXIS 37137, 2016 WL 1192689, at *7 (S.D.N.Y. Mar. 22, 2016). As such, defendants need not support their motion for summary judgment with affirmative evidence disproving plaintiffs' claims. See Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 713 (2d Cir. 1991) citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (summary judgment in favor of defendant was proper where defendant did not submit evidence negating plaintiff's claim, but demonstrated that plaintiff did not submit sufficient evidence to create a triable issue of fact regarding its claim); see also Murphy, 2016 U.S. Dist. LEXIS 37137, 2016 WL 1192689, at *7 (burden to show "some evidence which

---

[10] Courts use the same test to analyze N.Y. Lab. Law claims. Herman v. RSR Sec. Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999); see also Yu Y. Ho v. Sim Enterprises, Inc., 2014 U.S. Dist. LEXIS 66408, 2014 WL 1998237, at *10 (S.D.N.Y. 2014).

10

would create a genuine issue of material fact" shifted to plaintiff after defendant noted the absence of evidence that he was an employer).

In the instant action, Plaintiffs cannot establish that T.Y. Wang was their employer during the C.C. Wang Time Period. Instead, the indisputable record shows Plaintiffs' employment was controlled exclusively by C.C. Wang and Cindy during that time. Specifically, either C.C. Wang and Cindy interviewed, hired and fired Plaintiffs, except for those who voluntarily quit their employment. Moreover, C.C. Wang and Cindy supervised and controlled Plaintiffs' schedules and conditions of employment. C.C. Wang also determined the rate and method of payment of Plaintiffs' wages and maintained employment records for Ollie's to Go. All of these responsibilities carried out by C.C. Wang and Cindy vector towards the unavoidable conclusion that they, not T.Y. Wang, were Plaintiffs' employers during the C.C. Wang Time Period.

In fact, there is absolutely no evidence that would elevate T.Y. Wang into the definition of employer where C.C. Wang and Cindy undeniable and exclusively lie from July 2010 to May 17, 2015. Specifically, T.Y. Wang was a food consultant who did not have or exercise any control over Plaintiffs employment. T.Y. Wang rarely came to the restaurant, but only tasted dishes and met with management regarding menu items when he was there. Moreover, viewed from Plaintiffs' perspective, they only saw T.Y. Wang working with the kitchen staff, tasting dishes and speaking with C.C. Wang and Cindy, but do not know the sum or substance of those conversations. Plaintiffs may mistake T.Y. Wang having a conversation with C.C. Wang and Cindy as control, but simply having a conversation with Ollie's to Go's owner and manager is not sufficient to establish operational control. Plaintiffs otherwise have no factual basis to believe that T.Y. Wang had any authority over their employment.

The only evidence that Plaintiffs proffered for their contention that T.Y. Wang was their employer was that other employees said he was the owner and/or referred to him as "Boss." However, this alone is insufficient to establish employer liability under the FLSA and N.Y. Lab. Law on many levels. First, these statements that T.Y. Wang was the owner or referred to as the "Boss" are hearsay and inadmissible. Fraser v. MTA Long Island Rail Rd., 2018 U.S. Dist. LEXIS 55422, *38 (E.D.N.Y. Mar. 31, 2018) citing G.I. Home Developing Corp. v. Weis, 499 F. App'x. 87, 90 (2d Cir. 2012) (summary order) (holding that a party cannot sustain its burden in opposing summary judgment by relying on inadmissible hearsay evidence). Second, Plaintiffs' conclusory contentions, without more does not establish that T.Y. Wang had "operational control" over their employment. See Camara v. Kenner, 2018 U.S. Dist. LEXIS 54039, *19 (S.D.N.Y. Mar. 29, 2018)(granting summary judgment dismissing FLSA and NYLL claims against individual defendants since there was no evidence that either individual could hire and fire employees, supervised or controlled any employee's work schedule or conditions of employment, played any role in determining rate and methods of payment or participated in maintaining employment records); Davis v. Ching Yi Cheng, 2017 U.S. Dist. LEXIS 212738, *19-21 (E.D.N.Y. Dec. 28, 2017)(dismissing claims against all but one (1) individual defendant since there was "absolutely no evidence that any of the other co-defendants …, had anything to do with the Plaintiff's employment" including interviewing, hiring plaintiff or having anything to do with plaintiff's employment or wages).[11] Therefore, Plaintiffs' cannot meet their burden to create a genuine issue of fact, which necessarily requires dismissal of claims against T.Y. Wang prior to May 18, 2015.

Moreover, Plaintiffs' subjective belief that T.Y. Wang was their employer or "boss" is not sufficient to salvage their claims. In Chen v. DG&S, NY, Inc. (another action in which Troy

---

[11] Defendants note that Troy Law, PLLC was also plaintiffs' counsel in Camara and Davis.

12

Law, PLLC represented plaintiffs), claims for employer status were dismissed where facts regarding an individual defendant were much stronger than those against T.Y. Wang. 2016 U.S. Dist. LEXIS 135285, *7-10 (S.D.N.Y. Sept. 29, 2016). In Chen, plaintiffs maintained that an individual was their employer because he was viewed by a plaintiff as her "supervisor and boss," had authority to close the restaurant at night, came to the restaurant on a daily basis and distributed salaries. Id. at *9. The court held, *inter alia*, that there was no "objective evidence" to support the assertion that the defendant was the "boss," and therefore was not an employer. Id. Most importantly, the court held that plaintiffs' "beliefs, no matter how genuinely held, are simply of no consequence in assessing [defendant's] status as an employer under the economic reality test." Id. at *9-10 citing Garcia v. JonJon Deli Grocery Corp., 2015 U.S. Dist. LEXIS 108264, *3 (S.D.N.Y. Aug. 11, 2015) ("[T]he economic reality test turns on objective economic realities, not subjective beliefs as to who constitutes an employer."); see also Chao v. Vidtape, Inc., 196 F. Supp. 2d 281, 291 (E.D.N.Y. Apr. 22, 2002) (testimony that employers considered factory owner's father their "boss" was not sufficient to support a finding that he was an employer under the economic realities test although he was regularly present at the factory in question, attended certain employee meetings, and occasionally gave employees orders, but was not a shareholder in the company, never received paychecks from the company, never fired or hired employees, and played no integral role in setting employee work schedules), *aff'd as modified*, 66 F. App'x 261 (2d Cir. 2003).

Here, the evidentiary record demonstrates that T.Y. Wang had even less involvement at Ollie's to Go during the Chao Time Period than the alleged "employers" in Chen and Chao. Specifically, during the C.C. Wang Time Period, T.Y. Wang was a food consultant who "help[ed] with the menu and taste[d] the food … to see that it tasted proper." (SOF ¶ 42). During

13

that time period, prior to May 18, 2015, Plaintiffs only observed T.Y. Wang performing his consulting duties, were not directed to perform work by T.Y. Wang and had absolutely no knowledge as to whether T.Y. Wang had any control over their employment. Despite Plaintiffs' subjective belief that he was the "boss," during the C.C. Wang Time Period T.Y. Wang was not an owner, manager or employee, did not receive paychecks, never hired or fired employees, did not give employees orders, played no integral role in setting employee work schedules or wage rates and did not maintain employee records. Accordingly, all claims asserted against T.Y. Wang which arose prior to May 18, 2015 should be dismissed.[12]

### B. **Plaintiffs' Were Paid Properly While T.Y. Wang Defendants Operated Ollie's to Go**

As noted above, in May 2015, C.C. Wang abandoned Ollie's to Go, surrendered 2425 Chao's sub-lease and went to Taiwan for personal reasons. Thereafter, the T.Y. Wang Defendants reopened and began operating Ollie's to Go on May 18, 2015. There is no dispute that T.Y. Wang Defendants were the employers for the few Plaintiffs who worked at Ollie's to Go during the T.Y. Wang Time Period, on or after May 18, 2015. However, no liability exists for

---

[12] As they related to T.Y. Wang Defendants, Plaintiffs similarly cannot maintain claims against Trattoria Di Vino on the theory that it was a "joint employer" with 2425 Chao. Courts apply the "single integrated enterprise" test to "assess whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes." Juarez v. 449 Rest., Inc., 29 F. Supp. 3d 363, 367 (S.D.N.Y. Jul. 2, 2014) (collecting cases). Under that test, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Id.; see also Barfield v. N.Y. City Health & Hosps Corp., 537 F.3d 132, 149 (2d Cir. 2007) (viewing "joint employment as a question to be resolved from the totality of the evidence"). Here, there is no evidence establishing any of the single-employer factors between Trattoria Di Vino and 2425 Chao. The sole connection between the entities was that Trattoria Di Vino's employees dropped off delivery orders at Ollie's to Go which C.C. Wang, Cindy or Kang directed Plaintiffs to complete while working on the clock for and being paid by Ollie's to Go. Besides dropping off receipts and payments for deliveries, Plaintiffs had no interaction with employees for Trattoria Di Vino. This limited evidence is insufficient for Plaintiffs to meet their burden. Moreover, Plaintiffs' FLSA claims against Trattoria Di Vino are otherwise time-barred since Trattoria Di Vino ceased operations in 2012, more than there (3) years before the Complaint was filed. 29 U.S.C. § 255. Therefore, claims against Trattoria Di Vino should be dismissed as they pertain to T.Y. Wang Defendants.

Additionally, Duan's claims should be dismissed since he testified that he was paid properly for his entire employment from July through November 2010. He otherwise had no recollection as to whether certain "side-work" was performed while he was punched in or not. Without more, Duan cannot maintain his claims. Grochowski, v. Phoenix Constr., 318 F.3d 80, 87-88 (2d Cir. 2003) (plaintiff in FLSA overtime action must "produce[] sufficient evidence to show the amount and extent of [overtime] work as a matter of just and reasonable inference.") Accordingly, Duan's claims should be dismissed out of hand.

the T.Y. Wang Time Period since Plaintiffs admit to being paid properly. For example, J. Wang admits that he was paid properly starting in or around mid-2014 through the end of his employment. Similarly, Zhao admits that he was paid for all of his hours worked, except from 2010 until 2014. In addition, Kang and Zhang admit that they were accurately paid for all hours worked starting in May 2015. Accordingly, these Plaintiffs' claims against T.Y. Wang Defendants should be dismissed.

## CONCLUSION

WHEREFORE, 2425 Broadway LLC d/b/a Ollie's to Go, and Tsu Yue Wang respectfully request that the Court grant the instant motion and dismiss (a) all claims against 2425 Broadway LLC and Tsu Yue Wang; and (b) granting such other relief as the Court may deem just and proper.

Dated: May 4, 2018                 **MILMAN LABUDA LAW GROUP PLLC**

By: /s/ Joseph M. Labuda, Esq.
Joseph M. Labuda, Esq.
Matthew A. Brown, Esq.