UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                                                   :
JIANJUN CHEN, *et al., on behalf of themselves and*                :
*other similarly situated,*                                        :
                                                                   :
                                                      Plaintiffs,  :
                                                                   :
                         -against-                                 :
                                                                   :
2425 BROADWAY CHAO RESTAURANT, LLC                                 :
*et al.,*                                                          :
                                                                   :
                                                      Defendants.  :
------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/18/2019

1:16-cv-5735-GHW

<u>MEMORANDUM OPINION
AND ORDER</u>

**GREGORY H. WOODS, United States District Judge:**

On July 20, 2016, Plaintiffs, former delivery people for a Chinese restaurant in New York City called "Ollie's to Go," brought suit under the Fair Labor Standards act ("FLSA") and New York labor law for, *inter alia*, failure to pay the applicable minimum wage, failure to pay overtime, and failure to provide the requisite notification of tip and meal credits taken against wages. They alleged claims against numerous Defendants, only two of which have appeared in this case—Tsu Yue Wang and the corporate Defendant 2425 Broadway LLC, of which Tsu Yue Wang is the sole equity holder (collectively, the "T.Y. Wang Defendants"). Before the Court is the T.Y. Wang Defendants' motion for summary judgment as to all claims against them.

Plaintiffs' allegations against the T.Y. Wang Defendants are unsupported by the record. Not only do Plaintiffs' own deposition testimony cut strongly against their case, counsel for Plaintiff has, though what can only be described as an egregious failure to meet its obligations under Local Rule 56.1, admitted key exculpatory facts as to the T.Y. Wang Defendants. As a result, there is no dispute of material fact that, for the majority of the period at issue, neither T.Y. Defendant was the employer of any Plaintiff. And for the short period of time during which the T.Y. Wang Defendants did admittedly employ certain Plaintiffs, those Plaintiffs have conceded that they were properly paid,

received adequate notice of credits taken against their wages, and have presented the Court with no argument or case theory under which there is a question of material fact as to the T.Y. Wang Defendants' liability.  Accordingly, as Plaintiffs' have failed to articulate any theory upon which, given the record here, a rational finder of fact could hold the T.Y. Wang Defendants liable, the T.Y. Wang Defendants' motion for summary judgment is GRANTED in its entirety.

## I.   BACKGROUND

### A.  Facts[1]

Defendant Tsu Yue Wang ("T.Y. Wang") is a restauranteur, and the sole owner of Defendant 2425 Broadway LLC ("2425 LLC").  Dep. of T.Y. Wang (ECF No. 169-1) ("T.Y. Wang Dep.") 16:7-13; 19:5-20:7; 26:1-27:9.  T.Y. Wang operates, *inter alia*, several Chinese restaurants bearing the name "Ollie's" or "Ollie's to Go" in New York City.  *Id.*  16: 14-18:23; 27:14-25; 28:7-12.  Sometime between 2006 and 2008 (inclusive), T.Y. Wang, through 2425 LLC, leased the restaurant location at 2425 Broadway in Manhattan, New York (the "Premises"), and began to operate a Japanese restaurant named Haku on the Premises.  *Id.* 21:9-23:4.  Haku closed in 2009.  Plaintiff's Counter Statement of Material Facts (ECF No. 167) ("56.1") ¶ 3.[2]

Prior to 2010, Defendant Chao Ching Wang ("C.C. Wang") worked as a manager at a restaurant operated by T.Y. Wang called Chao Fang.  T.Y. Wang Dep. 26:8-27:9.  On March 8, 2010,

---

[1] Unless otherwise noted, the following facts are not disputed for purposes of this motion, or are taken in the light most favorable to Plaintiffs.  *See Mitchell v. City of New York*, 841 F.3d 72, 75 (2d Cir. 2016) (at summary judgment, a court "views the evidentiary record in the light most favorable to . . . the non-moving party").

[2] In the first, of many issues discussed in this opinion regarding Plaintiff's Local Rule 56.1 counterstatement, Plaintiffs, in paragraph 3 of their counterstatement, deny that Haku closed, citing, without explanation, to exhibit 30 of the Decl. of John Troy dated June 4, 2018 (ECF No. 169) ("Troy Decl.").  The Troy Declaration describes Exhibit 30 as "a letter dated December 15, 2010 from Tsu Yue Wang, on 2425 Broadway LLC's letterhead, to 2425 Broadway Chao Restaurant LLC demanding back rent," however, tabbed as exhibit 30 is actually what the Troy Declaration describes as Exhibit 29, a "copy of Excel spreadsheets purporting to show the time worked for employees of 2425 Broadway Chao Restaurant LLC."  Neither document, on its face, contradicts the asserted fact—that Haku closed in 2009—and Plaintiffs provide no explanation of how either document speaks to the issue.  Accordingly, this fact is deemed admitted.  Similar issues are a consistent feature of Plaintiffs' Local Rule 56.1 counter statement.  This opinion will not discuss each such failing individually, but, in the instances where Plaintiffs' 56.1 counter statement fails to properly contest an asserted fact, the Court has deemed that fact admitted.  For a more fulsome discussion of this issue, *see* section III(A), below.

after Haku closed, C.C. Wang obtained a sublease for the Premises through his company, 2425 Broadway Chao Restaurant LLC ("2425 Chao") (collectively, the "C.C. Wang Defendants) from the T.Y. Wang Defendants.  56.1 ¶¶ 5-6; Sublease, March 8, 2019 (ECF No. 169-14).  In July 2010, C.C. Wang opened a restaurant named "Ollie's to Go" at the Premises (the "Restaurant").  56.1 ¶ 8.

2425 LLC and 2425 Chao entered into two agreements as to the Restaurant.  The first, the March 10, 2018 sublease, in addition to providing a sublease to the Premises, also granted 2425 Chao a license to use the name "Ollie's to Go" in exchange for 4% of the Restaurant's gross sales, minus only taxes and tips.  Sublease ¶ 8.  The second agreement, the Consulting Services Agreement provided 2425 Chao with the use of the "Ollie's to Go" logo, and specified that 2425 Chao would benefit from 2425 LLC's consulting services to "[e]nsure all legal and necessary documents on files (sic)" in exchange for "4% of monthly restaurant net sales amount effectively on month of (sic) July, August and September 2010," though 2425 LLC agreed to "wave (sic) August and September 2010 consulting fee (sic)."  Consulting Services Agreement (ECF No. 169-15).  Both agreements were between the corporate entities, 2425 LLC and 2425 Chao, and were executed by the corresponding individual Defendants C.C. Wang and T.Y. Wang.  Sublease at 9; Consulting Agreement.  The Sublease further required that the Restaurant, during the C.C. Wang era, purchase its roast meats from one of T.Y. Wang's other companies.  Sublease ¶ 8.

C.C. Wang opened the Restaurant in July 2010.  56.1 ¶ 8.  Prior to the opening, C.C. Wang hired Defendant Cindy Cheah ("Cindy") to manage the Restaurant.  *Id.* ¶ 12.  C.C. Wang, through 2425 Chao, operated the restaurant from July 2010 until May 17, 2015 (the "C.C. Wang Period").  *Id.* ¶ 15.  Cindy worked as the manager of the Restaurant throughout the C.C. Wang period.  *Id.* ¶ 17. During the C.C. Wang Period, either C.C. Wang or Cindy, or both, were working at the Restaurant on any given day "to oversee the management of the [R]estaurant."  *Id.* ¶¶ 20-22.

### 1. The C.C. Wang Period:  July 2010-May 2015

From its opening until May 2015, the C.C. Wang Defendants operated the Restaurant. During the C.C. Wang Period, there is no allegation that 2425 Broadway LLC employed any employee of the restaurant.  *See* Third Amended Complaint ("3d AC") ¶ 39.  However, Plaintiffs allege that T.Y. Wang was Plaintiffs' employer, within the meaning of the FLSA and New York labor law, during the C.C. Wang period.  *Id.* ¶¶ 45-51.

The record supports the following additional facts regarding T.Y. Wang's role at the Restaurant during the C.C. Wang period:  During the C.C. Wang period, C.C. Wang contracted with T.Y. Wang to provide "food consulting services" due to T.Y. Wang's experience in the industry. 56.1 ¶ 33.  T.Y. Wang visited the Restaurant between one and three times a week during the C.C. Wang period.  56.1 ¶¶ 41, 64.  While at the restaurant T.Y. Wang tasted food and provided advice on the menu and dishes.  56.1 ¶ 42.  In addition to food consultation, T.Y. Wang provided consultation as to "ensuring [that] all legal and necessary documents were filed" pursuant to the Consulting Services Agreement.  Consulting Services Agreement.  T.Y. Wang had discussions with C.C. Wang and Cindy, and occasionally with certain Plaintiffs, during his Restaurant visits.  *See* Dep. of Alan Chun Kang, Nov. 15, 2017 (ECF. No. 196-6) ("Kang Dep.") 50:18-52:21.

Plaintiffs and other employees at the Restaurant referred to T.Y. Wang as the "lao ban," or the boss, and have testified that they believed him to be the ultimate boss.  *Id.*; Dep. of Genxiang Zhang, Dec. 11, 2017 (ECF No. 169-10) ("Zhang Dep.") 40:18:-41:6; Dep. of Qun Wan, Oct. 31, 2017 (ECF No. 169-13) ("Wan Dep.").  From time to time, managers of the Restaurant, such as Cindy, would instruct employees to clean up when they knew T.Y. Wang was coming to the Restaurant.[3]  Zhang Dep. 41:7-8; 55:10-56:15.

---

[3] Plaintiffs contend that T.Y. Wang also directed certain Plaintiffs to clean the Restaurant.  56.1 ¶ 146.  However, the evidence cited for that proposition, the November 20, 2017 deposition of Plaintiff Genshen Zhao, (ECF No. 169-11) ("Zhao Dep."), indicates that any such directions were given after C.C. Wang left the Country—meaning during the T.Y.

### a.  Trattoria Di Vino

Until it closed in 2012, T.Y. Wang had an ownership interest in Trattoria Di Vino, an Italian restaurant neighboring the Restaurant.  56.1 ¶¶ 198, 201.  Trattoria Di Vino did not employ its own delivery personnel.  56.1 ¶ 200.  Instead, Trattoria Di Vino benefitted from an arrangement in which employees of the Restaurant, including Plaintiffs Chen, Pu, Zheng, Kang, Duan, J. Wang, Fu, Zhang and Zhao, delivered food prepared by Trattoria Di Vino, and brought to the Restaurant where it was given to the delivery person assigned to the task through a rotation system.  56.1 ¶¶ 203, 205.

Cindy and C.C. Wang instructed various employees to deliver the food from Trattoria Di Vino—sometimes via instructions passed on by Plaintiff Kang.  56.1 ¶ 204.  Plaintiff Kang has testified that T.Y. Wang, on occasion, also directed him to deliver, or cause to be delivered by other Restaurant employees, food from Trattoria Di Vino.  Kang Dep. 37:20-38:18.

### b.  T.Y. Wang's Limited Role During the C.C. Wang Period

The record makes clear that during the C.C. Wang Period, C.C. Wang managed the Restaurant, while T.Y. Wang's role at the Restaurant was limited.  C.C. Wang, not T.Y. Wang, "was responsible for setting up work rules and policies for employees."  *Id.* ¶ 25.  "[O]nly C.C. Wang and Cindy had authority to interview, hire, fire and discipline employees," *id.* ¶ 26. and only C.C. Wang and Cindy had authority to set employee schedules and wage rates at the restaurant."  *Id.* ¶ 27.  Indeed, "T.Y. Wang did not consult C.C. Wang regarding any hiring or firing of employees at Ollie's to Go," *id.* ¶ 37, nor did T.Y. Wang "consult with C.C. Wang regarding the management of employees at Ollie's to Go."  *Id.* ¶ 39.  "T.Y. Wang had no involvement in interviewing or hiring employees and never hired delivery persons at Ollie's to Go."  *Id.* ¶ 38.[4]

---

Wang Period, not the C.C. Wang Period.  Zhao Dep. at 74:7-23.

[4] Plaintiff's cite to no evidence in their denial of 56.1 ¶ 38, perhaps because the only deposition testimony they could have cited to support their denial is inadmissible hearsay.  *See* Dep. of Chen Jian Jua, Jan. 18, 2018 (ECF No. 169-3) ("J.J. Chen Dep.") 33:20-34:11 ("Q.  Was there any reason they gave for why you were laid off?  A.  Afterwards I heard it was

"During the C.C. Wang Time Period, C.C. Wang determined the rate of pay for employees, including delivery persons." *Id.* ¶ 28. "C.C. Wang also maintained employment records for the restaurant including, but not limited to, payroll records, employee applications and other tax forms." *Id.* ¶ 30. And "only C.C. Wang and Chichu Yu [the 5% minority owner of 2425 Chao] had authority to authorize payment of employee wages and sign payroll checks." *Id.* ¶ 31; *see id.* ¶ 4. "C.C. Wang hired an accountant to coordinate payroll practices and employee wages, but did not otherwise consult with T.Y. Wang on those issues." *Id.* ¶ 36.

### 2.  The T.Y. Wang Period:  May 18, 2018-Present

In May 2015, C.C. Wang left the country and abandoned the lease of the Premises.  56.1 ¶ 179.  On May 18, 2018 the T.Y. Wang Defendants began to operate the Restaurant.  *Id.*  The T.Y. Wang Defendants continue to operate the Restaurant to this day.  56.1 ¶ 181.

When the T.Y. Wang period began, T.Y. Wang required the Restaurant's employees, including holdovers from the C.C. Wang Period, to fill out "new hire" paperwork, including W-4, I-9 and New York Labor Law § 195.1[5] forms in order to be "rehired."  *See* 56.1 ¶ 194.  Several Plaintiffs worked at the Restaurant during the T.Y. Wang period.  56.1 ¶ 186.  All such Plaintiffs "were paid properly" during their employment during the T.Y. Period, and "left their employment within a few months."  *Id.*

---

the boss [T.Y. Wang] who made the order saying the workers has to have legal status in order to work.  Q. When did you here that? If you got laid off in April of 2011, when did you hear this and who told you this?  A. Maybe, 10 days or half a month. I don't exactly remember.  Q. Who told you?  A. It's like we meet other workers afterwards.  I don't remember exactly but during conversation he ask me where you work and I told him and we get to that topic and he told me exactly the details.  I don't remember.");  Wan Dep.  57:11-21 ("Q . So if I understand you correctly, Cindy said this guy Xu, who had a motorbike, was brought in by the boss [T.Y. Wang]; is that right?  A.  Yes. And then down the road he said the same thing himself, namely that he was brought in, or brought there by the boss.  Q.  That's what Xu told you?  A Everybody knows. Everybody knows.");  *see* 56.1 ¶¶ 62 (in which Plaintiffs cite to inadmissible hearsay).

[5] New York Labor Law § 195.1 forms include information as to credits against wages for, as relevant here, tips and meals provided.

### B.  Procedural History

Plaintiffs filed this case on July 20, 2016.  Since that time, Plaintiffs have served three amended complaints, (ECF Nos. 56, 81, 121), and the Court has decided T.Y. Wang's  motion to dismiss.  (ECF No. 69).

On May 4, 2018, the T.Y. Wang Defendants served a motion for summary judgment as to all claims against them. (ECF No. 155).  That motion was fully briefed by June 18, 2018, and is currently before the Court.

## II.    STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323).  To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)).

"The mere existence of a scintilla of evidence in support of the [non-movant's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."

*Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is

some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted),

and she "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed.

Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is

"required to resolve all ambiguities and draw all permissible factual inferences in favor of the party

against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)

(internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or

resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation

omitted); *see also Hayes v. N.Y. CiT.Y. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying

th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of

witnesses."). "Assessments of credibility and choices between conflicting versions of the events are

matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d

549, 553 (2d Cir. 2005) (citation omitted). However, if "no rational finder of fact 'could find in

favor of the nonmoving party because the evidence to support its case is so slight,' summary

judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting

*F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

## III.   DISCUSSION

### A.   Plaintiffs' Admission of Key Facts

Plaintiffs' Local Rule 56.1 Counter Statement of Material Facts contains multiple,

inappropriate, denials without citation to the record, with the consequence that key facts as to this

dispute have been admitted by Plaintiffs.  Not only that, but the blanket denials, and apparently strategic failure to provide record citations throughout their briefing, appears to be a tactic employed by counsel for Plaintiffs in an attempt to obfuscate the paucity of the evidence supporting their arguments, and conceal their reliance on inadmissible hearsay.  Accordingly, for the reasons stated below, the Court has construed Plaintiffs' unsupported denials as admissions of several key facts asserted by the T.Y. Wang Defendants.

"The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).  Local Rule 56.1 requires a party moving for summary judgment to submit "a separate, short and concise statement" setting forth material facts as to which there is no genuine issue to be tried.  Local Rule 56.1(a).  A party opposing summary judgment must respond with a statement of facts as to which a triable issue remains.  *See* Local Rule 56.1(b).  The facts set forth in a moving party's statement "will be deemed to be admitted unless controverted" by the opposing party's statement.  Local Rule 56.1(c).  Local Rule 56.1(d)further provides that "[e]ach statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible" as required by Fed.R.Civ.P. 56(e).  "[D]istrict courts in the Southern and Eastern Districts of New York" with the approval of the Second Circuit, "have interpreted current Local Rule 56.1 to provide that where there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." *Holtz*, 258 F.3d 73-74 (2d Cir. 2001) (quotation marks and alterations omitted) (collecting cases).  "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Id.* at 73.  The Court is not required to deem the facts that Plaintiff categorically denies without pointing to record evidence as admitted, but it is appropriate here.

At the March 22, 2018 post discovery status conference, the Court, on the record, reminded

the parties of their obligations under Local Rule 56.1, stating:

> Remember that a 56.1 statement is not an answer.  You cannot simply deny a fact.
> If you write 'denied' in response to an asserted fact, I will treat that as an admission
> instead.
>
> You must point the Court specifically to record evidence that's presented to the
> Court, and you must specify your views regarding the relevant fact.  Again, if you
> write 'deny,' or object to a statement of fact without presenting the Court with the
> record evidence supporting your view, I will treat that as an admission."

March 22, 2019 Tr. (ECF. No. 180-1) 22:5-13.

Despite the Court's express, on the record, reminder of the parties' obligations under Local

Rule 56.1, Plaintiffs' failure to comply with the rule has been egregious.  At least fifteen times,

Plaintiffs' Local Rule 56.1 Counter Statement claims to "deny" a fact asserted by the T.Y. Wang

Defendants, and supported by the T.Y. Wang Defendants' citations to the record, without providing

any citation or evidence to support Plaintiffs' denial of the asserted fact.  *E.g.* 56.1 ¶ 26

(["Defendants assert that] [d]uring the C.C. Wang Time Period, only C.C. Wang and Cindy had

authority to interview, hire, fire and discipline employees. (See Labuda Dec., Ex. "B", pps. 16:21-17:

15; 21:15-18).  [Plaintiffs counter:]  Deny."); *see id.* ¶¶ 8, 15, 27, 28, 30, 31, 33, 36-40, 54, 186.

Blanket, unsupported denials of this type are contrary to the text of Local Rule 56.1, the case law in

this Circuit regarding practice under Local Rule 56.1, and the Court's express on the record direction

as to how it would apply Local Rule 56.1 here.  Accordingly, in keeping with the practice in this

district, the Court disregards any unsupported assertion or denial of fact made by Plaintiffs.[6]

---

[6] Many of the facts that Defendant denied without providing any support in the record are key facts in regards to T.Y. Wang's alleged status as an "employer" during the C.C. Wang period.  *Compare* 56.1 ¶ 26 ("During the C.C. Wang Time Period, only C.C. Wang and Cindy had authority to interview, hire, fire and discipline employees") w*ith Carter v. Duchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984) (factors relevant to the "employer" analysis include whether the putative employer "had the power to hire and fire the employees."  Accordingly, counsel for Plaintiffs failure to comply with Local Rule 56.1 has negatively impacted their clients' capacity to pursue this case against the T.Y. Wang Defendants.

Counsel for Plaintiffs' failure to meet their obligations under Local Rule 56.1 are further compounded by their inappropriate use of "*passim*" in their memorandum of law opposing summary judgment. *See* Pl.'s Opp. (ECF No. 166) at 4, 5, 6, 9). The Court provides the following quote as an illustrative example:

> Deposition testimony of the Plaintiffs, however, reveals a very different story. According to Plaintiffs, Tsu Yue Wang actually hired at least one employee, that throughout the relevant period both before and after May 2015 he had the authority to discipline every employee, that throughout the relevant period both before and after May 2015 employees adjusted their behavior to ensure he would not discipline them either directly or through their managers, that throughout the relevant period both before and after May 2015 he would direct both kitchen workers and deliverymen in the performance of their duties (for deliverymen especially he would direct them to clean the restaurant), and that until 2012 it was at his insistence that Ollie's to Go deliverymen make deliveries for his other, neighboring restaurant, Trattoria di Vino. *See* Counter-56.1 Statement, *passim*.

*Id.* at 9.

Plaintiffs' use of *passim* above provides the Court with no basis in the record for their assertions—despite the fact that the cited sentence refers to the depositions of various Plaintiffs, implying that citation to those depositions should be possible. To the extent that counsel for Plaintiffs presumed that the Court would comb through the multi-thousand-page record in hopes of finding some scintilla of support for Plaintiffs' unsupported factual statements, they are mistaken. *Accord Nicholas Acoustics & SpecialT.Y. Co. v. H & M Const. Co.*, 695 F.2d 839, 846-47 (5th Cir. 1983) ("[P]ractical constraints on the time of a judge make it impossible for the judge to examine a record of even moderate size with such finitude as to be both exhaustive and exhausting. Judges are not ferrets!"). And while that mistake has proven detrimental to Plaintiffs' case, such errors could be construed as the product of merely ineffective or disinterested lawyering. However, the Court gleans the possibility of a more strategic, and inappropriate, purpose animating counsel for Plaintiffs' decisions.

Consider the paragraph of Plaintiffs' opposition papers quoted above. Plaintiffs, in pertinent part, assert that Defendant T.Y. Wang "had the authority to discipline every employee." *Id.* However, in paragraph 26 of Defendants Local Rule 56.1 Statement, Defendants assert (and support with record citation) that "only C.C. Wang and Cindy had authority to interview, hire, fire, and discipline employees." 56.1 ¶ 26. Plaintiffs denied that assertion, without providing a citation, which, for the reasons described above, leads the Court to deem the fact admitted for the purpose of summary judgment. In this way, Plaintiffs' use of *passim* above appears to be a strategic choice designed to obfuscate the fact that Plaintiffs have not provided factual support for their contention.

Another example of this issue metastasizing is also evident in the same sentence quoted above. In that quote, Plaintiffs contend that T.Y. Wang hired "at least one employee" during the C.C. Wang Period. As Plaintiffs provide no specific citation to the record in the quoted section of their argument, the Court could only determine the accuracy of that statement through its own review of the record—which revealed that Plaintiff Wan's testimony that T.Y. Wang hired a delivery man named Xu is based entirely on inadmissible hearsay, not Mr. Wan's personal knowledge. Wan Dep. 57:11-21; *see* n.4, above. Accordingly, Plaintiffs' inappropriate use of *passim* also appears to have been an attempt to conceal their reliance on inadmissible evidence in support of key factual assertions.

Not only is Plaintiffs' use of *passim* inappropriate in that it fails to provide the Court with any indication of what evidence, if any, supports Plaintiffs' position, it is at minimum highly suggestive of an inappropriate attempt by counsel for Plaintiffs to obfuscate their failure to support their position with evidence, their failure to comply with Local Rule 56.1, and their use of inadmissible evidence to support their positions. And while counsel for Plaintiff may have considered it strategically advantageous to thus mislead the Court as to

the strength of their evidentiary support—that strategic decision has directly contributed to the admission of key facts at issue here.

### B.  Standard for Determining Employer Status Pursuant to the FLSA

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The statute further defines the term "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g).  Those definitions are construed broadly, as "the remedial nature of the statute . . . warrants an expansive interpretation of its provisions." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  The New York Court of Appeals has not yet answered the question of whether the test for "employer" status is the same under the FLSA and the New York labor law, *see Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013), but in the Second Circuit, courts generally interpret "[t]he statutory standard for employer status under NYLL [to be] nearly identical to that of the FLSA." *E.g. OlvPeriod v. Bareburger Group LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014) (discussing New York Labor Law); *see also Marcelino v. 374 Food, Inc.*, 16-cv-6287-KPF, 2018 WL 1517205, at *12 (S.D.N.Y. Mar. 27, 2018) ("The FLSA and NYLL statutes are often construed together, particularly when the New York Court of Appeals has not spoken to an issue under the NYLL.").  As no party has argued that any standard other than the federal standard should apply here, the Court proceeds under the federal standard.  *See Beng Khoon Loo v. I.M.E. Rest., Inc.*, 17-cv-02558-ARR-RER, 2018 WL 4119234, at *4 (E.D.N.Y. Aug. 29, 2018); *Hernandez v. Jrpac Inc.*, 14-cv-4176-PAE, 2016 WL 3248493, at *22 (S.D.N.Y. June 9, 2016).

A single employee can have multiple employers under the FLSA, and an employer can be held liable even if he was not "personally complicit in FLSA violations." *Beng Khoon Loo*, 2018 WL 4119234, at *4 (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013) (citing 29 C.F.R. § 791.2).  Whether a defendant qualifies as an employer under the FLSA is "determined on a case-by-case basis by review of the totality of the circumstances." *Irizarry*, 722 F.3d at 104.  While the

Second Circuit has "identified different sets of relevant factors based on the factual challenges posed by particular cases" *id.*, "[n]o individual circumstance is dispositive to the question of whether an individual is an employer, and courts have concluded that an individual defendant qualifies as an "employer" even when several of the Carter factors do not apply in a specific case. *Beng Khoon Loo*, 2018 WL 4119234, at *5 (citing *Jin Dong Wang v. LW Restaurant, Inc.*, 81 F. Supp. 3d 241, 256 (E.D.N.Y. 2015)). Rather, in determining whether an individual or entity falls under the "employer" umbrella, the Court's inquiry focuses on the "economic reality" of the relationship between the purported employer and the workers in question. *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-142 (2d Cir. 2008) (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961)).

The Second Circuit has identified two considerations to provide guidance as to whether a defendant qualifies as an employer under the FLSA. *Irizarry*, 722 F.3d at 104. First, the Court must consider evidence as to the individual defendant's "authority over management, supervision, and oversight of [a company's affairs] in general." *Irizarry*, 722 F.3d at 111 (alteration in original). Such evidence is "relevant to 'the totality of the circumstances in determining [the individual's] operational control of [the company's] employment of [the plaintiff employees].'" *Id.* at 110 (quoting *Herman*, 172 F.3d at 140 (alterations in original)). A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment. *Irizarry*, 722 F.3d at 110. "The operational control inquiry asks about the relationship between the individual defendant's decision-making authority and the company's activities, as opposed to focusing exclusively on the individual's relationship with the employees themselves." *Beng Khoon Loo*, 2018 WL 4119234. "Still, courts must consider the defendant's operational control of the company's employment of the relevant plaintiffs, 'rather than simply operational control of the company'" *Id.* (quoting *Irizarry*, 722 F.3d. at 109. "A

person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d. at 109.

The second inquiry is as to evidence of the defendant's "direct control" over the plaintiff employees. *Id.* at 722 F.3d at 111.  In this stage of the analysis, the Court considers the factors articulated in *Carter v. Duchess Community College*:  "[W]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  735 F.2d 8, 12 (2d Cir. 1984).  No factor is dispositive, rather each factor's impact on the analysis must be considered under the totality of the circumstances.  *See Irizarry*, 722 F.3d. at 116 (finding, in a "close case," that under the totality of the circumstances that the defendant was an employer though he only satisfied two of the four *Carter* factors); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947) ("the determination of the [employer-employee] relationship does not depend on . . . isolated factors but rather upon the circumstances of the whole activity.").  While a positive finding under the four *Carter* factors can be "can be *sufficient* to establish employer status" such a finding is not *necessary* to establish an employment relationship."  *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003).

The determination of employment status is a "fact-intensive," inquiry *Barfield*, 537 F.3d at 143, making it "rarely suitable for summary judgment."  *Jin Dong Wang*, 81 F. Supp. 3d at 254; *but see Barfield*, 537 F.3d at 135-36 (affirming the district court's grant of summary judgment on the question of defendant's "employer status").

## C.  The C.C. Wang Period

No rational finder of fact could conclude that either of the T.Y. Wang Defendants were any Plaintiffs' employer, within the meaning of the FLSA or New York labor law, during the C.C. Wang

period.  Plaintiffs' do not allege or argue that 2425 LLC was any Plaintiffs' employer during the C.C.

Wang period.  *See* 3d AC ¶ 39; *see, generally,* Pls.' Opp.  Nor does any evidence support that

contention, even had it been made.  Accordingly, the Court need not consider the corporate

Defendant further.  There is no genuine dispute of fact as to this issue, 2425 LLC was not any

Plaintiffs' employer during the C.C. Wang era.

As to T.Y. Wang, Plaintiffs have adduced evidence supporting the following factual

contentions relevant to this analysis.  T.Y. Wang is a restauranteur who operates several Chinese

restaurants with "Ollie's" in their name.  Through his company 2425 LLC, he subleased the

Premises to C.C. Wang, through 2425 Chao.  T.Y. Wang licensed the name "Ollie's to Go" and the

corresponding logo to C.C. Wang for a monthly fee, and had access to the Restaurants' books and

taxes for the purposes of ensuring that rent and the monthly licensing fee were paid.  T.Y. Wang

also provided consulting services as to the Restaurant's food and paperwork.  Through another of

his companies, T.Y. Wang also was the Restaurant's supplier of roast meats.

During the C.C. Wang period, T.Y. Wang visited the Restaurant one to three times per week.

In keeping with his food consulting responsibilities, T.Y. Wang tasted the food, commented on its

preparation, and gave advice on the menu.  T.Y. Wang also told C.C. Wang to review the applicable

labor laws.  Employees, including the Plaintiffs, thought of T.Y. Wang as their "boss," and would

clean up when he arrived.

Finally, T.Y. Wang instructed at least one Plaintiff to deliver food for T.Y. Wang's

neighboring restaurant, Trattoria Di Vino.  C.C. Wang and Cindy also instructed the Plaintiffs to

that effect, causing food from Trattoria Di Vino to be delivered by certain Plaintiffs—with the task

assigned via a rotation system.

Even after drawing all inferences in favor of the Plaintiffs, and understanding that this is an

area of law which is rarely suited for summary judgment, this evidence is insufficient, as a matter of

law, to support the conclusion that T.Y. Wang employed any Plaintiff during the C.C. Wang period, for the reasons articulated below.

### 1.  Operational Control

None of the evidence as to T.Y. Wang implies that he had operational control over the Restaurant during the C.C. Wang Period, or its polices and procedures, much less operational control sufficient to "affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d at 110.  The fact that he, through his various corporate interests, subleased the Premises, licensed the name "Ollie's to Go" and the corresponding logo, and supplied the Restaurant with roast meats indicates, at most, a franchise-type relationship.  None of that evidence tends to show that T.Y. Wang had any control, or authority to control, the terms or conditions of Plaintiffs' employment.

Nor is the fact that certain employees subjectively considered T.Y. Wang to be a "boss" and referred to him as such relevant to this objective analysis.  *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 374 (S.D.N.Y. 2014) (plaintiffs' "subjective beliefs" about an individual's employer status are not sufficient to give rise to liability); *Beng Khoon Loo*, 2018 WL 4119234, at *6 ("the fact that plaintiffs may have subjectively thought of her as their boss, as evidenced by their use of the nickname 'lady boss,' does not demonstrate that she was in fact their boss.").

On the other hand, Plaintiffs have admitted, *inter alia*, that T.Y. Wang did not set employee schedules, did not have the authority to hire, fire, or discipline employees nor did he consult on those issues, did not have the authority to set employee schedules, did not set pay rates, did not have the authority to sign paychecks, and did not maintain records for the Restaurant.  *See* 56.1 ¶¶ 25-38; *see also* § II(A), above.

Nor does the evidence that T.Y. Wang directed at least one Plaintiff to deliver food from Trattoria Di Vino demonstrate that he had operational control over the Restaurants' employment of

the Plaintiffs. "Even when an individual defendant gives employees orders or directions, she does not become an 'employer' unless she also holds 'an integral role in [the company's] operations, or in setting work policies, schedules or conditions of employment.'" *Beng Khoon Loo*, 2018 WL 4119234, at \*6 (quoting *Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 291 (E.D.N.Y. 2002)). "'Plaintiffs cite no authority for the proposition that assignment of daily tasks, when unrelated to hours worked or wages received, is relevant to the 'employer' analysis.'" *Id.* (quoting *Allende*, 11-cv-5427-AJN-KNF, 2013 WL 11327098, at \*3 (S.D.N.Y. Feb. 1, 2013).

Plaintiffs have provided no evidence which shows that T.Y. Wang was able to give directions to Plaintiff's because he had operational control over them during the C.C. Wang Period. Not everyone who has the power to give directions to an employee is their employer. *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 464 (S.D.N.Y. 2015) ("an individual does not become an employer merely by directing employees to carry out tasks related to customer service."). As a food consultant, T.Y. Wang may have had the authority to direct employees as to certain kitchen tasks, and as a businessman, T.Y. Wang may have benefitted from a relationship with C.C. Wang in which C.C. Wang provided Trattoria Di Vino with *ad hoc* delivery services, but without more, the incidental authority to direct an employee to accomplish a task is an insufficient basis for any rational finder of fact to conclude that T.Y. Wang had operational control over the Restaurants' employment of the Plaintiffs. *See Beng Khoon Loo*, 2018 WL 4119234, at \* 6 (finding alleged employer lacked operational control though she directed plaintiffs to clean up the restaurant and was subjectively believed by plaintiffs to be the "boss lady.").

### 2. Direct Control

Plaintiffs have also failed to adduce evidence sufficient to give rise to a genuine dispute of material fact as to T.Y. Wang's direct control over the Plaintiffs. "The direct control inquiry focuses on four primary factors that are often present in an employment relationship: (1) authority over the

hiring and firing of employees; (2) supervision and control of work schedules and the conditions of employment; (3) determination of rates and methods of payment; and (4) maintenance of employment records" which the Court described above as the *Carter* factors. *Beng Khoon* Loo, 2018 WL 4119234, at *7 (citing *Carter*, 735 F.2d at 12).

As Plaintiffs have essentially admitted, none of the *Carter* factors apply to T.Y. Wang during the C.C. Wang Period. *See* § I(A)(1), above. There is no evidence that T.Y. Wang ever hired or fired an employee, nor any evidence that he had the authority to do so (first factor). *See id.* Nor did T.Y. Wang determine any Plaintiffs' rate or method of payment (third factor). *Id.* And it was C.C. Wang, not T.Y. Wang, who maintained employment records for the Plaintiffs (fourth factor). *Id.*

The only even remotely colorable *Carter* factor is the second. Plaintiffs contend that because certain Plaintiffs delivered food from Trattoria Di Vino, at least once at T.Y. Wang's direction, and because T.Y. Wang provided guidance to the kitchen staff as to food preparation, the second *Carter* factor weighs in Plaintiffs' favor. Pls.'s Opp. at 15. While, in this area at least, the evidentiary record provides some support for Plaintiffs' arguments, the law does not.[7]

As discussed above, "[e]ven when an individual defendant gives employees orders or directions, she does not become an 'employer' unless she also holds 'an integral role in [the company's] operations, or in setting work policies, schedules or conditions of employment.'" *Beng Khoon Loo*, 2018 WL 4119234, at *6 (quoting *Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281, 291 (E.D.N.Y. 2002)). T.Y. Wang did not have an integral role in the Restaurant's operations during the C.C. Wang Period. The record indicates that T.Y. Wang may have had the authority to issue certain directions to employees, but that, alone, is insufficient to show that he had "supervision and control of [Plaintiffs'] work schedules," let alone that he was their employer. *Carter*, 735 F.2d at 12. Instead,

---

[7] Plaintiffs also repeatedly assert that T.Y Wang directed Plaintiffs to clean up the Restaurant. However, the only evidence cited to support that proposition is deposition testimony as to T.Y. Wang giving such directions during the T.Y. Wang Period, not during the C.C. Wang Period. *See* n.3, above.

his limited and incidental power to give directions to employees within defined spheres of influence is consistent with T.Y. Wang's role as a food consultant and long-term business associate of the Restaurant's owner, and does not, without more, tend to show that he exercised "supervision and control of work schedules and the conditions of employment" for any Plaintiff.  *Carter*, 735 F.2d at 12.

Accordingly, the Court concludes that none of that *Carter* factors are applicable to T.Y. Wang during the C.C. Wang Period.  However, before proceeding, the Court expressly addresses the arguments raised by Plaintiffs in this regard.   In their opposition to summary judgment, Plaintiffs argue that, during the C.C. Wang period, T.Y. Wang was Plaintiffs' employer "under the economic realities test" because:

- He directly supervised both kitchen workers and deliverymen (second factor); and
- He was admittedly responsible under the "consulting agreement" for wage and other employment law compliance matters and exercised his authority to have employees who did not present satisfactory work authorization fired (third factor); and
- He had the authority to maintain employment records including the authority to access 2425 Broadway Chao Restaurant LLC's account books and taxes (fourth factor).

Pls.'s Opp. at 15.  As discussed above, the incidental direction of employees argument, while ultimately insufficient to implicate the second *Carter* factor, let alone defeat summary judgment, is at least remotely colorable.  However, the other two arguments presented by Plaintiffs are inherently flawed and unsupported by the record.  The Court address Plaintiff's argument as to the third and fourth Carter factors in turn.

As to the third *Carter* factor, Plaintiffs reference two "facts" in support of their arguments:  1) that T.Y. Wang provided consulting as to employment documentation and paperwork; and 2) that T.Y. Wang caused employees without work authorization to be fired.  The first claim in inapposite, and the second is inaccurate.  Plaintiffs cite no law for the proposition that

consulting on employment paperwork is relevant to the analysis here.  Even if T.Y. Wang provided consultation as to employment paperwork, that does not imply he "determined the rate and method of payment" for those employees as Plaintiffs contend.  *Carter*, 735 F.2d at 12.

On the other hand, it is an uncontested fact that during the C.C. Wang Period "only C.C. Wang and Cindy had authority to set employee schedules and wage rates at the restaurant."  56. 1 ¶ 27.  Furthermore, while Plaintiffs cite to the third *Carter* factor, their claim that T.Y. Wang caused an employee to be fired for lack of proper work authorization speaks more to the first *Carter* factor. In any event, the evidence which purportedly supports Plaintiffs' claim that T.Y. Wang caused an employee to be fired due to lack of proper work authorization is the deposition testimony of Plaintiff Chen Jian Jua, who testified that, at least 10 days after the fact, he heard that T.Y. Wang caused him to be fired from an unnamed third party.  J.J. Chen Dep. 33:20-34:11, *see* n.4, above. That testimony is inadmissible hearsay, which cannot be used to defeat summary judgment, and which may explain Plaintiffs' counsel's strategic decision not to include any factual citations in this section of their brief.  *See Woods v. Newburgh Enlarged City Sch. Dist.*, 288 F. App'x 757, 759 (2d Cir. 2008) (citing *Feingold v. New York*, 366 F.3d 138, 155 n. 17 (2d Cir. 2004) ("In reviewing the district court's grant of summary judgment, . . . we may only consider admissible testimony."); *Patterson v. County of Oneida*, 375 F.3d 206, 222 (2d Cir. 2004) ("finding that hearsay evidence regarding another person's tolerance for racial behavior was 'not competent evidence in opposition to summary judgment'").  And, in any event, Plaintiffs have admitted that T.Y. Wang did not have the authority to fire any Plaintiff during the C.C. Wang Period.  56.1 ¶ 26.  Accordingly, the Court rejects Plaintiffs' arguments as the third *Carter* factor.

Plaintiffs' arguments as to the fourth *Carter* factor fare no better.  As quoted above, Plaintiffs further contend that T.Y. Wang had the authority to "maintain employment records, including the authority to access including the authority to access 2425 Broadway

Chao Restaurant LLC's account books and taxes." Pls.'s Opp. at 15.  That statement is erroneous on several levels.  Self-evidently, access to a company's books does not imply that one has the authority to maintain employment records for that company.  Otherwise, every shareholder with the right to access a company's books would also, by logical extension of this argument, have the power to maintain employment records for that company, and become, in Plaintiff's view, an employer of that company's employees.   That is an irrational position.

Furthermore, it is uncontested that during the C.C. Wang period, "C.C. Wang . . . maintained employment records for the restaurant including, but not limited to, payroll records, employee applications and other tax forms," *Id.* ¶ 30, and that "C.C. Wang hired an accountant to coordinate payroll practices and employee wages, but did not otherwise consult with T.Y. Wang on those issues." *Id.* ¶ 36.  In other words, there is no evidence that T.Y. Wang maintained employment records for the Restaurant during the C.C. Wang period, Defendants have conceded that C.C. Wang, not T.Y. Wang maintained these records, and Plaintiffs' invocation of T.Y. Wang's access to the Restaurant's books and taxes due to the terms of the Sublease is a flimsy and futile attempt to claim otherwise, despite the clarity of the record in this regard.

For all these reasons, the Court holds that no rational finder of fact could conclude that T.Y. Wang's exercised direct control over Plaintiffs' employment during the C.C. Wang period, and, as the Court has already found likewise as to T.Y. Wang's operational control over this period, the Court concludes, that no rational finder of fact could concude the T.Y. Wang was any Plaintiffs' employer over the C.C. Wang period.

### D.  *Beng Khoon Loo v. I.M.E. Rest., Inc.*

Throughout this analysis, the Court has cited liberally to *Beng Khoon Loo v. I.M.E. Rest., Inc.* 2018 WL 4119234.  Before proceeding to its discussion of the T.Y. Wang period, the Court takes a moment to articulate why *Beng Khoon Loo* is particularly persuasive here.  In *Beng Khoon Loo*, the issue presented was whether one Ms. Ma, who was the live-in girlfriend of the manager of the restaurant at issue and who also worked as the cashier at the restaurant, qualified as an employer under the FLSA and New York Labor law.  The *Beng Khoon Loo* plaintiffs, represented by the same counsel as Plaintiffs here, Troy Law PLLC, argued that Ms. Ma was an employer, due primarily to the following facts:  1) she was in the restaurant every day 2) she directed plaintiffs to clean up the restaurant 3) she authorized plaintiffs to take sick days and 4) the plaintiffs thought of her as a boss and referred to her as "lady boss"  *Id.* at *6-8.  Those facts were insufficient to defeat the defendants' motion for summary judgment in *Beng Khoon Loo*.

Comparatively, the facts in this case are even weaker for than they were in *Beng Khoon Loo*. T.Y. Wang only visited the restaurants a few times per week, substantially less than the time Ms. Ma spent in the restaurant at issue in *Beng Khoon Loo*.  Furthermore, the fact that Ms. Ma granted certain plaintiffs leave to take sick days comes far closer to implicating the second *Carter* factor than the facts of this case—as it directly (if incidentally) affected the plaintiffs' work schedule.  Finally, as in this case, Ms. Ma's occasional directions regarding tasks to be undertaken, and the plaintiff's subjective belief that she was their boss, were insufficient to defeat summary judgment.  Hopefully, the consistent outcome here and in *Beng Khoon Loo* will provide some guidance to future litigants.

### E.  The T.Y. Wang Period

There is no dispute that during the T.Y. Wang period, the T.Y. Wang Defendants are employers within the meaning of the FLSA and NY Labor law.  However, Plaintiffs have admitted that all Plaintiffs who worked at the Restaurant during the T.Y. Wang Period were properly paid.

56.1 ¶ 186.  Plaintiffs have also admitted that when the T.Y. Wang Defendants took over operations

of the Restaurant, they were provided with employment forms including New York Labor Law

§ 195.1 forms, which notify the recipient of credits taken against their wages for items such as tips

and meals.  *See* 56.1 ¶ 194.  Plaintiffs have not presented any argument or evidence that any such

notifications were in any way inaccurate or insufficient.  Accordingly, the Court concludes that,

during the T.Y. Wang Period, Plaintiffs were properly paid and provided with adequate notices.

Presumptively aware of this issue, Plaintiffs' only arguments as to the liability of the T.Y.

Wang Defendants during in the T.Y. Wang Period relate to alleged time shaving—which they

acknowledge runs contrary to Plaintiffs' testimony that they were properly paid during this period.[8]

> Additionally [to the arguments about the C.C. Wang Period presented previously],
> Plaintiffs have raised the issue of whether their underpayment continued after May
> 2015, under the regime of 2425 Broadway LLC.  It is an easy thing to bamboozle an
> unsophisticated plaintiff at a deposition, where nearly every inquiry is permitted, into
> saying he was paid properly.  But Plaintiffs described a policy of time shaving that
> involved making them work during their clocked-out break time, and both Plaintiffs'
> testimony (discounting prompted declarations against interest) and Defendants'
> records show that something that looked very much like it—a clocked-out break in
> the middle of the day despite employees being scheduled to work throughout the
> day, calculated hours looking the same after as before the changeover—continuing
> past May 2015.  *See* Exs. 21–28.  The only record of anything having changed after
> May 2015 is that Defendants started keeping and maintaining copies of employee
> time of hire notices and time clock records.

Pls.' Opp. at 13.

Notably this argument, even if accepted at face value, is only purporting to demonstrate that

there was a policy in place during the T.Y. Wang Period which "looked very much like" "time

shaving," and does not even claim, with any degree of certainty, that time shaving took place.

Regardless, the Court rejects this argument for the reasons that follow.

---

[8] Counsel for Plaintiffs has repeatedly attempted to argue that Plaintiffs' testimony should be discounted when it runs
contrary to their case because "[i]t is an easy thing to bamboozle an unsophisticated plaintiff at a deposition."  Pls.' Opp.
at 10; *see* March 22, 2018 Conference Tr. (ECF No. 162-14) at 12:1-22.  The Court rejects the argument that the
testimony of counseled Plaintiffs, with their representation present to defend their interests at the deposition, should be
discounted when it runs contrary to Plaintiffs' counsels' theory of the case.

First, as discussed above, Plaintiffs have admitted that they were properly paid in the T.Y. Wang Period.  56.1 ¶ 186.  That fact alone is fatal to this argument.  Second, Plaintiffs have testified, as Plaintiffs acknowledge in the quoted passage above, that they were properly paid during the T.Y. Wang Period.[9]  Third, to the extent this argument contends that alleged time-shaving during the C.C. Wang Period continued as a matter of practice during the T.Y. Wang Period, Plaintiffs have, for the reasons which follow, failed to adduce evidence sufficient for a rational finder of fact to support their theory, given the relevant deposition testimony and admissions.

In the quoted section of their brief above, Plaintiffs' cite to exhibits 21-28 of the June 4, 2018 affidavit of John Troy.  (ECF No. 169).  None of those exhibits provide any support for their position.  Exbibits 21 and 22 to that affidavit are untranslated-handwritten-Mandarin documents which the Court does not accept as evidence.[10]  (ECF Nos. 169-21, 22).  Exhibits 23, 24, 25, and 27 to the Troy affidavit are time records from the T.Y. Wang period which show that certain Plaintiffs clocked out for a midday break.  (ECF No. 169-23-25).  Exhibit 26 is a Department of Treasury form demonstrating that at the beginning of the T.Y. Wang Period, Plaintiff J. Wang's tips, both those paid in cash and via credit card, were reported as taxable income.  And Exhibit 28 is 2425 Chao's payroll run from July 1, 2010 to May 31, 2015, provided without any analysis of its voluminous contents, or explanation of how this aggregate data demonstrates that Plaintiffs'

---

[9] Dep. of J. Wang, Nov. 2, 2017 (ECF No. 169-8) at 14:16-("Q:  Is this true with all the delivery workers, that they [were not paid for hours worked on certain side tasks]  A.  Should be yes, Should be, yes.  Q.  Same thing in terms of their pay, they would have been shorted somewhere between two and a half to five hours a week; is that right?  A.  That us right, yes, yes.  Q.  Then that all changed for you and the other delivery workers sometime around July of 2014, where you and all the other delivery workers got paid for all the hours were working; is that right?  A.  What year of July 14, of what year.  Q.  2014?  A.  Yes, correct, the last year that is approximately right, yes.  Q.  That was true with everybody that worked there that worked the early shift; correct?  A.  Basically, yes.  Basically yes.  Q.  Do you know if there was any shortage of pay for the delivery people that worked the late shift?  A.  Well, the late shift, we are all the same.  We are all the same.")

[10] Paragraphs 21 and 22 of the Troy Declaration purport to summarize these documents.  No translations of these documents, certified or otherwise, were submitted; counsel's lassitude in presenting such untranslated records to the Court is of considerable concern to the Court.  Suffice to say that Plaintiffs' counsel's summary of the documents is not evidence.

unproven allegations of time shaving practices during the C.C. Wang Period continued during the T.Y. Wang Period.  (ECF No. 169-28); again, s*ee Nicholas Acoustics & SpecialT.Y. Co.*, 695 F.2d 839, 846-47 ("Judges are not ferrets!").  For all these reasons, the Court concludes that the only asserted basis for liability during the T.Y. Wang period, the alleged time shaving, has not been substantiated by any evidence.

Accordingly, no rational finder of fact could, on this record, conclude that the T.Y. Wang Defendants violated either the FLSA or New York labor law during the T.Y. Wang Period, and summary judgment is granted to the T.Y. Wang Defendants as to the T.Y. Wang Period.

## IV.    CONCLUSION

For the reasons articulated above, the T.Y. Wang Defendants motion for summary judgment as to all claims against them is GRANTED in its entirety.

The Clerk of Court is directed to terminate Tsu Yue Wang and 2425 Broadway LLC as defendants in this case, and to terminate the motion pending at docket number 155.

SO ORDERED.

Dated:  March 18, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge