UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                          :
JIANJUN CHEN, et al., on behalf of themselves   :
 and other similarly situated,                             :
                                                          :                  1:16-cv-5735-GHW
                                          Plaintiff,   :
                                                          :            MEMORANDUM OPINION
                 -against-                              :                 AND ORDER
                                                          :
2425 Broadway Chao Restaurant, LLC, et al.,    :
                                                          :
                                            Defendants.  :
------------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

Before the Court is Defendant Tsu Yue Wang's and Defendant 2425 Broadway LLC's (collectively, the "T.Y. Wang Defendants") motion for sanctions pursuant to Fed.R.Civ.P. 26(g) against counsel for Plaintiffs—John Troy and his law firm, Troy Law PLLC ("Troy Law"). Mr. Troy signed responses to the T.Y. Wang Defendant's requests to admit which cannot be reconciled with his client's prior deposition testimony. Accordingly, for the reasons that follow, the T.Y. Wang Defendants' motion for sanctions is GRANTED IN PART and DENIED IN PART.

I.    BACKGROUND

The Court assumes familiarity with the facts of this case, as described in the Court's March 18, 2019 Memorandum Opinion and Order granting the T.Y. Wang Defendants' motion for summary judgment (the "Opinion"). Dkt. No. 185. The Court also assumes familiarity with the Court's March 27, 2019 oral opinion denying the T.Y. Wang Defendants' motion for sanctions to the extent that motion requested sanctions pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1928, and the Court's inherent power (the "Oral Opinion"). *See* Dkt. No. 191.

During the March 27, 2019 conference, the Court informed the parties that:

> [M]y decision not to impose Rule 11 sanctions here turns on what I will describe as two wisps of evidence viewed through the light of the FLSA jurisprudence. My decision not to impose sanctions under my inherent powers[] [and] under 28[] United States Code[] Section 1927 turns on what may be again a generous determination on my part that the actions by [Plaintiffs'] counsel were not taken in bad faith with an intent to defraud the Court.

March 27, 2019 Tr. 28:12-19, Dkt. No. 202-1. At the conclusion of that conference, the T.Y. Wang Defendants requested that the Court separately consider sanctions pursuant to Fed.R.Civ.P. 26(g) due, in part, to the mandatory nature of said sanctions. The Court granted that request. *See* Dkt. No. 191.

On April 1, 2019 the T.Y. Wang Defendants served their supplemental letter brief requesting sanctions pursuant to Fed.R.Civ.P.26(g). Br., Dkt. No. 192. Counsel for Plaintiffs opposed that submission on April 15, 2019. Opp., Dkt. No. 195. On April 19, 2019, counsel for Plaintiffs submitted the April 19, 2019 affidavit of John Troy in further opposition of Rule 26 sanctions. Troy Aff., Dkt. No. 199. The T.Y. Wang Defendants served their reply on May 3, 2019. Reply, Dkt. No. 202. This issue is now fully briefed and ripe for adjudication

Put at issue by the T.Y. Wang Defendants are three discovery responses, all of which were signed by Mr. Troy. Br. at 2. On September 1, 2017, Plaintiffs served their responses to the T.Y. Wang Defendants' interrogatories and requests for admission (the "Pre-Deposition Responses"). Dkt. Nos. 162-8, 162-9. Those responses were served prior to Plaintiffs' depositions. Subsequently, on March 28, 2019 and after Troy Law defended Plaintiffs' depositions, Plaintiffs served their responses to another round of the T.Y. Wang Defendants' requests for admission (the "Post-Deposition Responses"). Dkt. No. 162-10.

The T.Y. Wang Defendants moved for sanctions pursuant to Fed.R.Civ.P. 26(g) on various grounds, which can be summarized as follows. *See* Br. at 2. First, that the Pre-Deposition

2

Responses included responses which cannot be reconciled with Plaintiffs' subsequent deposition testimony. *Id.* Second, that counsel for Plaintiffs failed to amend those responses after deposition testimony demonstrated that they were inaccurate. *Id.* Third, that the Post-Deposition Responses were inaccurate in light of Plaintiffs' prior deposition testimony. In light of those inaccuracies, the T.Y. Wang Defendants requested that the Court sanction counsel for Plaintiffs by imposing on them the fees and costs associated with taking Plaintiffs' depositions—contending that those depositions would not have been necessary had counsel for Plaintiffs provided fully accurate responses in discovery. Br. at 3.

## II. STANDARD

Rule 26(g) requires that "[e]very disclosure under Rule 26(a) (1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name." Fed.R.Civ.P. 26(g)(1).

"By signing a response to a discovery request, an attorney certifies that to the best of her 'knowledge, information, and belief formed after a reasonable inquiry,' the response is (1) consistent with the Federal Rules of Civil Procedure and justified under existing law; (2) not interposed for any improper purpose, such as to unnecessarily delay or needlessly increase the costs of litigation; and (3) reasonable given the importance of the issue and the circumstances of the case.'" *Kiobel v. Royal Dutch Petroleum Co.*, 02-cv-7618-KMW-HBP, 2009 WL 1810104, at *2 (S.D.N.Y. June 25, 2009) (quoting Fed.R.Civ.P. 26(g)(1)).

"An attorney's inquiry satisfies Rule 26(g) if her inquiry, including her investigation and her resulting conclusions, was objectively reasonable under the circumstances." *Id.* (citing Fed.R.Civ.P. 26(g) advisory committee's note). "In making her inquiry, an attorney may rely, when appropriate, on representations by her client or by other attorneys." *Id.* "Rule 26(g) does not require the signing

3

attorney to certify the truthfulness of the client's factual responses to a discovery request." *Id.* (quotation omitted). An attorney has made a "reasonable inquiry" if the "investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances . . . . Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances." *Quinby v. WestLB AG*, 04-cv-7406-WHP-HBP, 2005 WL 3453908, at *4 (S.D.N.Y. Dec. 15, 2005) (quoting Fed.R.Civ.P. 26(g) advisory committee's note to 1983 Amendment). Absent a court order, Fed.R.Civ.P 26(e) requires counsel to supplement "disclosure[s] under Rule 26(a)" as well as responses to interrogatories, requests for production, or requests for admission "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed.R.Civ.P. 26(e).

"Rule 26(g) is intended to deter and curb discovery abuses, including evasive responses, by 'explicitly encouraging the imposition of sanctions.'" *Kiobel*, at *2 (quoting Fed.R.Civ.P. 26 advisory committee's note). The certification requirement "obliges each attorney to stop and think about the legitimacy of the discovery request, a response thereto, or an objection." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees and Rest, Employees Int'l Union*, 212 F.R.D. 178, 218-19 (S.D.N.Y. 2003) (quoting Fed.R.Civ.P. 26(g), advisory committee's note to 1983 Amendment). "[A]ll attorneys conducting discovery owe the court a heightened duty of candor." *Kosher Sports, Inc. v. Queens Ballpark Co., LLC*, 10-cv-2618-JBW, 2011 WL 3471508, at * 7 (E.D.N.Y. Aug 5, 2011).

"Pursuant to Rule 26(g)(3), if an attorney's certification violates Rule 26 without substantial justification, sanctions are mandatory." *Kiobel*, at *2 (quoting Fed.R.Civ.P. 26(g)(3). "If a court determines that sanctions are appropriate, Rule 26(g) leaves the nature of the sanction to the court's discretion." *Id.* (citing Fed.R.Civ.P. 26 advisory committee's note."). In the event that sanctions are

4

imposed, the "sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed.R.Civ.P. 26(g)(3).

## III. DISCUSSION

### A. Pre-Deposition Responses

There is no dispute that the Pre-Deposition Responses contained numerous responses which were later contradicted by the testimony of certain Plaintiffs at their depositions. However, counsel for Plaintiffs correctly contends that by signing those responses, they were not certifying the accuracy of the information, but rather were certifying that the process utilized by counsel for Plaintiffs to gather information from their clients was "objectively reasonable under the circumstances." *Kiobel*, at *2. The Court accepts Mr. Troy's description of the process used to gather the required information, and does not find that process to be unreasonable under the circumstances. Accordingly, for the reasons which follow the motion for sanctions is denied as to the Pre-Deposition Responses.

In his affidavit, Mr. Troy described his firm's process for responding to discovery requests of this type as follows:

> 2. I have set up a systematic way for my office to prepare for discovery requests.
> 3. After my office receives [sic] discovery request from the opposing party, my office would contact the clients and informing [sic] the same.
> 4. During the meeting or telephone conference with the clients, my office staff would present the questions or requests that were made to the clients, and ask the clients for answers and responses.
> 5. After acquiring answers from the clients, my office staff would then prepare responses to discovery requests.
> 6. After the initial draft of discovery response is done, my office staff would compare the current answer or response to our interview records with the client.

5

7. If there are any discrepancies with our interview records, my office staff would require the client to explain.
8. My office staff would then update the responses according to the client's explanation.
9. If there are no discrepancies, my office staff would simply have the client review the responses and make verifications if required.

. . .

17. My office staff is always under my strict scrutiny when dealing with any office related tasks, such as responding to discovery requests.

Troy Aff. That process is an objectively reasonable approach to responding to a discovery request.

The Court notes, however, that there have been some indicia that this process was not followed as scrupulously as it should have been in this case. As discussed in the Oral Opinion, counsel for Plaintiffs were too frequently unprepared to discuss the issues at bar at various conferences and advocated for positions without evidentiary support—conduct which at least implies that Plaintiffs' counsel did not possess the intimate familiarity with the facts which one might expect from the process described by Mr. Troy, if that process had been scrupulously applied. Furthermore, at the March 27, 2019 conference, Mr. Troy claimed that he himself did "the personal interviews with our clients," March 27, Tr. at 11:23-25, while his affidavit indicates that in fact those interviews were done by his "office staff," and, in particular, his then-associate Kibum Byun, who has since departed Troy Law. Troy Aff. ¶¶ 2-11. The Court is troubled by these inconsistencies. However, the Court accepts Mr. Troy's account of his process, accepts that Mr. Troy's legal staff was under his "strict scrutiny," and accepts that even scrupulous attorneys can err without such errors being inherently unreasonable. Accordingly, no sanctions are imposed on the basis of the inaccuracies in the Pre-Deposition Responses.

Nor will the Court impose sanctions for Troy Law's failure to amend those responses after deposition testimony demonstrated their inaccuracy. Fed.R.Civ.P. 26(e) imposes an obligation to

supplement discovery responses of these types "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed.R.Civ.P. 26(e). The fact that Plaintiffs' deposition testimony materially contradicted aspects of their Pre-Deposition Responses was plainly known to counsel for T.Y. Wang Defendants, who took those very depositions. Accordingly, Troy Law was not obligated to amend those responses on the basis of Plaintiffs' deposition testimony. Accordingly, to the extent the T.Y. Wang Defendants seek sanctions on the basis of Troy Law's failure to amend the Pre-Deposition Responses, their motion is denied.

### B. Post-Deposition Responses

The same analysis, however, does not apply to the Post-Deposition Responses. Those responses contain inaccuracies which cannot be reconciled with Plaintiffs' prior deposition testimony. As counsel for Plaintiffs were clearly aware of the testimony their own clients gave at depositions they defended, the errors described below are sanctionable. Accordingly, for the reasons articulated below, to the extent the T.Y. Wang Defendants seek sanctions on the basis of the Post-Deposition Responses, their motion is granted.

On March 28, 2018 Plaintiffs served their certified responses to certain requests to admit served by the T.Y. Wang Defendants. Mr. Troy signed those responses on March 27, 2018. Dkt. No. 162-10 at 9. Certain of those responses, reproduced below, contain patent and objectively unreasonable inaccuracies.

> **Request No. 9:** During your alleged employment with 2425 Broadway LLC, you were paid an hourly rate for all hours worked.
>
> In addition to the foregoing General Objections, Plaintiffs object to this Request as overly broad and burdensome in that it purports to encompass compensations over an expansive time. Subject to and without waiving the foregoing General and Specific Objections,

7

> Plaintiffs deny that they were paid for all hours worked. Plaintiffs Allen Chun Kang, Jiangshe Wang, Genxiang Zhang and Genshen Zhao admit they was [sic] paid on an hourly basis for some of the hours they worked.
>
> . . .
>
> **Request No. 11:** You understood that your weekly wages were payment for all hours worked for Defendant 2425 Broadway LLC.
>
> In addition to the foregoing General Objections, Plaintiffs object to this Request as overly broad and burdensome in that it purports to encompass compensations over an expansive time period. Plaintiffs further object to the terms "understood" and "all hours" undefined [sic], vague, and ambiguous. Subject to and without waiving the foregoing General and Specific Objection, [sic] Plaintiffs Deny [sic] this Request to the extent that the weekly wages paid to Plaintiffs did not reflect *all* hours worked.

Dkt. No. 162-10 (emphases in original).

Both Requests expressly pertain to the Plaintiffs' employment with 2425 Broadway LLC. As discussed in the Opinion, 2425 Broadway LLC did not become any Plaintiff's employer until at or around May 2015 (the "T.Y. Wang Period"). Opinion at 6.

In that context, Plaintiff Allan Chun Kang's November 15, 2017 deposition testimony stands in stark contrast to the responses to Request Nos. 9 and 11.

> Q. . . . Let's start with just 2015. So, let me ask you this way, it looks like from May 2015 through September 2015 you worked 38.5 hours. Is it fair to say for that entire calendar year of 2015, that you worked the 38.5 schedule? So that would mean that you worked 38.5 hours per week from January through September 2015 is that a fair statement?
>
> A. Yes.
>
> Q. Let's go to 2014. Is it fair to say that you worked the 38.5 hour schedule per week in 2014?
>
> A Well, if you look at the form, that's the time that is shown as well as the time card says the same thing.

8

> Q. Okay. Well, I don't have any of the time cards for 2014. Are you saying your schedule was 38.5 hours in 2014 but you worked something different?
>
> A. Yes.
>
> Q. So, then, let me clarify one thing with respect to 2015. Is it a fair statement to say that throughout the calendar year of 2015, you worked 38.5 hours per week and you were paid for 38.5 hours per week?
>
> A. Yes
>
> Q. All right. Is it a fair statement to say that before 2015 you were pad for 38.5 hours per week, but you worked more than 38.5 hours?
>
> A. Yes.

Kang Dep. at 22:12-23:22, Dkt. No. 157-6. The responses to Requests No. 9 and 11 clearly indicate that Plaintiffs, including Mr. Kang, denied that they were paid for all the hours they worked while employed by 2425 Broadway LLC. Mr. Kang, however, had testified, months prior to Mr. Troy's signature on the Post-Discovery Responses, that he had been paid for all the hours he had worked in 2015, the only period during which he had been employed by 2425 Broadway LLC. Furthermore, as discussed in the Opinion, Mr. Kang was not the only Plaintiff whose deposition testimony contradicted the Post-Discovery Responses.[1] Indeed, Plaintiffs ultimately admitted that they were properly paid during the T.Y. Wang Period and failed to adduce evidence sufficient for a reasonable jury to conclude that any Plaintiff was improperly paid during the T.Y. Wang Period. *See* Opinion at 25-26.

---

[1] *See* Dep. of Jianshe Wang, Nov. 2, 2017 (ECF No. 169-8) at 14:16-15:19 ("Q: Is this true with all the delivery workers, that they [were not paid for hours worked on certain side tasks]. A. Should be yes, Should be, yes. Q. Same thing in terms of their pay, they would have been shorted somewhere between two and a half to five hours a week; is that right? A. That is right, yes, yes. Q: Then that all changed for you and the other delivery workers sometime around July of 2014, where you and all the other delivery workers got paid for all the hours were working; is that right? A. What year of July 14, of what year. Q: 2014? A. Yes, correct, the last year that is approximately right, yes. Q. That was true with everybody that worked there that worked the early shift; correct? A. Basically, yes. Basically yes. Q. Do you know if there was any shortage of pay for the delivery people that worked the late shift? A. Well, the late shift, we are all the same. We are all the same.")

This is not a minor discrepancy, nor can the Court conclude that this error could have been the product of an objectively reasonable inquiry on the part of counsel for Plaintiffs to verify their signed certified discovery responses. Counsel for Plaintiffs defended Mr. Kang during his deposition, heard his testimony, and still subsequently denied that he was paid for all hours worked during his employment by 2425 Broadway LLC, despite the clear evidence to the contrary.

The Court finds that counsel for Plaintiffs failed to meet their obligations under Fed.R.Civ.P. 26, for which the Court imposes sanctions pursuant to Rule 26(g). Accordingly, to the extent the T.Y. Wang Defendants request the imposition of sanctions as to the Post-Discovery Responses, their motion is granted.

### C. Sanctions

Rule 26(g) specifies that sanctions imposed pursuant to that rule "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed.R.Civ.P. 26(g)(3). Counsel for Plaintiffs' violation of their Rule 26 obligations caused the scope of the issues briefed and decided at summary judgment to expand. Indeed, despite ultimately admitting that all Plaintiffs were properly paid in the T.Y. Wang Period, adducing no evidence that any Plaintiff was improperly paid during the T.Y. Wang Period, and being aware, as Mr. Kang's testimony demonstrates, that at least certain Plaintiffs had testified that they were properly paid during that period, Plaintiffs still pursued the case on the theory that Plaintiffs were improperly paid during the T.Y. Wang Period. Opinion 25-26. If counsel for Plaintiffs had adhered to their Rule 26 obligations and admitted in the Post-Deposition Responses that at least some Plaintiffs were paid for all hours they worked during the T.Y. Wang Period, then the scope of issues considered at summary judgment could have been narrowed. Accordingly, the Court is inclined to award the T.Y. Wang Defendants reasonable fees and costs associated with the drafting and service of their motion for

summary judgment, and for attending related conferences.  However, even if the Rule 26 violations discussed in § III(B) above had not taken place, the Court surmises that the motion for summary judgment would likely still have proceeded as to the violations of labor law which were alleged to have taken place prior to the T.Y. Wang Period.  Accordingly, because one of the two categories of issues presented in the summary judgment motion need not have been pursued but for Plaintiffs' counsels' improper discovery responses, the Court will award the T.Y. Wang Defendants 50% of the reasonable fees and costs associated with summary judgment.

Additionally, the T.Y. Wang Defendants are awarded reasonable fees and costs associated with the drafting and service of their motion for sanctions, and for attending related conferences. "Rule 26(g) is intended to deter and curb discovery abuses, including evasive responses, by 'explicitly encouraging the imposition of sanctions.'" *Kiobel*, at *2 (quoting Fed.R.Civ.P. 26 advisory committee's note).  The Court has repeatedly given counsel for Plaintiffs the benefit of every doubt when considering whether sanctions were appropriate, both here and in the Oral Opinion.  No generosity of spirit, however, can overcome the evidence here, which clearly establishes that counsel for Plaintiffs failed to meet their obligations under Rule 26—and came very close to warranting sanctions on a variety of other grounds.  *See* Oral Opinion.  In order to deter the discovery abuses discussed in § III(B) above, reasonable fees and costs as to the motion for sanctions are awarded to the T.Y. Wang Defendants.  The Court will not, however, award costs for taking Plaintiffs' depositions, as those costs were not caused by the violations described in § III(B) above.

As the Court noted on March 27, 2019, "the Troy Law firm is a repeat player in FLSA litigation in this district as well as the Eastern District of New York."  Oral Opinion 28:20-21.  Mr. Troy is the named partner of Troy Law, and is the attorney who signed the offending Post-Discovery Responses which are the predicate for the sanctions imposed today.  Not only is he

11

obligated to supervise his associates and staff, but he has averred that he has "set up systematic way for [his] office to prepare for discovery requests" and that, as part of that process, his "office staff is always under [his] strict scrutiny when dealing with any office related tasks, such as responding to discovery requests." Troy Aff. ¶¶ 2, 17. Accordingly, the culpability for the discovery violations at issue falls squarely on Mr. Troy's shoulders. For that reason, and because the imposition of sanctions against Mr. Troy serves the interests of personal and general deterrence, the Court imposes sanctions on Mr. Troy personally, rather than on Troy Law or Mr. Troy's associates.

## IV. CONCLUSION

For the reasons articulated above, Mr. Troy is sanctioned, and the T.Y. Wang Defendants are awarded 50% of the reasonable fees and costs associated with their motion for summary judgment, and 100% of the reasonable fees and costs associated with their motion for sanctions.

The T.Y. Wang Defendants are directed to submit an application for those fees and costs—including time records and a supporting affidavit—and a proposed order of judgment, no later than June 4, 2019.

SO ORDERED.

Dated: May 24, 2019
New York, New York

GREGORY H. WOODS
United States District Judge