UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
JIANJUN CHEN, *on behalf of themselves and others* :
*similarly situated*, et al. :
                                          Plaintiffs, :
:
            -against- :
:
WMK 89th STREET LLC, et al. :
:
                                          Defendants. X
--------------------------------------------------------------

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED:  5/20/2020 |

1:16-cv-5735-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Court

　　This is the second time that the Court has had to consider whether to sanction Troy Law,

PPLC ("Troy Law") in connection with the firm's work on this case pursuant to either Rule 11 or

the Court's inherent authority.[1]  The first time, the Court declined to impose sanctions because of

"two wisps of evidence" and a "generous determination . . . that the actions by [Plaintiffs'] counsel

were not taken in bad faith with an intent to defraud the Court."  Mar. 27, 2019 Tr., Dkt. No. 205,

28:13–19; *see also* Dkt. No. 203 at 1.  Still, the Court called its decision a "yellow card," and warned

counsel that although "I could impose sanctions on this state of facts . . . I am exercising my

discretion not to do so," and "I hope that the experience will encourage more scrupulous

compliance with the rules going forward."  Dkt. No. 205 at 29, 36, 39–40.

　　For the reasons that follow, it is evident that the hoped-for compliance with the rules of

Civil Procedure did not come to pass.  The time has come for the Court to pull out the red card.

---

[1] Unfortunately, the Court has also been faced with the question of whether to sanction the firm for failing to
comply with their obligations under Federal Rule of Civil Procedure 26.  *See generally* Dkt. No. 203.

I.      **BACKGROUND**

    A.  **Default Judgment Proceedings**

Complications have dogged this case from the start.  Plaintiffs filed this action in July 2016 against numerous defendants, alleging violations of both the Fair Labor Standard Act ("FLSA") and New York Labor Law ("NYLL").  For more background on the facts underlying this action, the Court refers the reader to its summary judgment opinion.  *See Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, No. 1:16-CV-5735-GHW, 2019 WL 1244291 (S.D.N.Y. Mar. 18, 2019).

Only two defendants initially appeared:  Tsu Yue Wang ("T.Y. Wang") and the corporate Defendant 2425 Broadway LLC, of which T.Y. Wang is the sole equity holder (collectively, the "T.Y. Wang Defendants").  *See* Complaint, Dkt. No. 1, at 1–2, 61; *Chen*, 2019 WL 1244291, at *1–2. Those defendants litigated this case through to summary judgment, where the Court found that Plaintiffs' allegations against the T.Y. Wang Defendants were completely unsupported by the record and dismissed all claims against them.  The Court also sanctioned Troy Law under Federal Rule of Civil Procedure 26(g) for failing to meet their Rule 26 obligations and granted Defendants T.Y. Wang and 2425 Broadway LLC an award of $49,920.00 in attorneys' fees and costs.  *See* Dkt. No. 209 at 4.

Plaintiffs then moved for default against the remaining defendants.  In seeking certificates of default from the Clerk of Court, the owner and managing partner of Troy Law, John Troy, affirmed "under penalty of perjury," that he had properly served all of the defendants with the complaint in this case:

- 2425 Broadway Chao Restaurant d/b/a Ollie's to Go Restaurant was served on August 11, 2016.  *See* Dkt. No. 22.  A copy of the summons and complaint were left with "'Jane Doe, a manager at the restaurant's premises 2425 Broadway, New York, NY 10024 known to be the Corporate Defendant's managing agent authorized to accept service." Dkt. No. 232 at 2.

- WMK 89th Street d/b/a Trattoria di Vino was served on August 11, 2016. *See* Dkt. No. 27. A copy of the summons and complaint were left with "cashier Naketa Martey, a manager at the restaurant's premises 2427 Broadway, New York, NY 10024 known to be the Corporate Defendant's managing agent authorized to accept service." Dkt. No. 233 at 2.

- Cho Kam Sze was served on August 11, 2016. *See* Dkt. No. 26. A copy of the summons and complaint were left with "'Jane Doe,' a person of suitable age and discretion at his actual place of business, the restaurant's premises 2425 Broadway, New York, NY 10024, and mailing to the same address later that same day." Dkt. No. 228 at 2.

- Cindy Cheah was served on October 10, 2019. *See* Dkt. No. 246. A copy of the summons and complaint were left at "defendant' [sic] address at 4231 Colden Street, Apartment 149, Flushing, NY 11355." Dkt. No. 254 at 2.

- Anthony Mazzola was served on August 11, 2016. *See* Dkt. No. 29. A copy of the summons and complaint were left "with Naketa Martey, a person of suitable age and discretion at their actual place of business, the restaurant's premises 2427 Broadway, New York, NY 10024." Dkt. No. 229 at 2.

- Victor Kasner was served on August 11, 2016. *See* Dkt. No. 30. A copy of the summons and complaint were left "with Naketa Martey, a person of suitable age and discretion at his actual place of business, the restaurant's premises 2427 Broadway, New York, NY 10024, and mailing to the same address later that same day." Dkt. No. 230 at 2.

- Kevin Garcia was served on August 11, 2016. *See* Dkt. No. 31. A copy of the summons and complaint were left "with Naketa Martey, a person of suitable age and discretion at his actual place of business, the restaurant's premises 2427 Broadway, New York, NY 10024, and mailing to the same address later that same day." Dkt. No. 231 at 2.

- C.C. Wang (originally called "John Wang") was served twice: first with the original complaint on August 11, 2016. Dkt. Nos. 24, 99. A copy of the summons and complaint were left "with 'Jane Doe,' a person of suitable age and discretion at their actual place of business, the restaurant's premises 2425 Broadway, New York, NY 10024, and mailing to the same address later that same day." Dkt. No. 227 at 2. C.C. Wang was served with the third amended complaint on October 10, 2019 by nail and mail at 41-40 Union Street, Apt. 6D, Flushing, NY 11355. *See* Dkt. Nos. 249, 253.

The Court scheduled a date for the default hearing: January 31, 2020. *See* Dkt. No. 259.

This is where the story takes a turn. Had the Court proceeded with the default judgment hearing, and had no defendants appeared to contest the default, the Court would have had no reason to doubt the truthfulness of any of these affirmations, or the propriety of the service on any of these defendants. But on January 27, 2020, Defendant Mr. Kasner appeared and moved to set aside the default, asserting that he was never properly served with the complaint. *See* Dkt. No. 269

at 2.  Although he had been a minority shareholder of Trattoria Di Vino, the restaurant had closed in 2012.  Mr. Kasner lived in Florida and had never designated anyone at the restaurant's former location as his agent for service of process.  Thus, service in 2016 at Trattoria Di Vino's former location could not have been proper.

In response, Plaintiffs immediately moved to voluntarily dismiss the claims against Defendant Mr. Kasner.  *See* Dkt. No. 273.

### B.  The January 31, 2020 Hearing

Troubled, the Court proceeded with the otherwise scheduled January 31, 2020 hearing. There, the Court asked the associate from Troy Law about the propriety of service on Mr. Kasner. Initially, Troy Law's Leanghour Linn instead focused on why Plaintiffs were moving to voluntarily dismiss all claims against Mr. Kasner:  After reviewing the motion to vacate Mr. Kasner's default judgment, Troy Law, for the first time, "tried to verify" whether he was actually a person against whom any of the Plaintiffs had any claims.  Jan. 31, 2020 Tr. at 5:3–4.  Troy Law showed their clients a photo of Mr. Kasner that they had retrieved from social media, and discovered that their clients could not identify him, so Ms. Linn "admitted that we mistakenly include [sic] Mr. Kasner as the employee of plaintiff."  Jan. 31, 2020 Tr. at 9:3–5.

The Court then turned to the premise of Defendant Mr. Kasner's motion to vacate the default—namely, his allegations that Plaintiffs had not properly served him with the complaint. Although John Troy's affidavit stated that Mr. Kasner was served on August 11, 2016 "at his actual place of business, the restaurant's premises [sic] 2427 Broadway, New York, NY 10024," Dkt. No. 230 at 2, Mr. Kasner explained that the restaurant at 2427 Broadway, Trattoria Di Vino, had closed in 2012, *see* Dkt. No. 268, ¶ 2.  This was no secret; Troy Law admitted as much in their Rule 56.1 Statement:  "Trattoria Di Vino ceased operations and closed for business in 2012."  56.1 Statement,

Dkt. No. 167, ¶ 201.  How, then, could service on Mr. Kasner have been proper?  How could John

Troy affirm that 2427 Broadway was Mr. Kasner's actual place of business in 2016?

> Leanghour Linn was unable to answer that question:
>
> MS. LIM: Your Honor, that was the only information that we had at the time, so we
> served him at the address that we have, that we believe that it was his employment
> address.  And later on—
> THE COURT:  I'm sorry.  What's the basis for your belief that it was his
> employment address?  As you stated earlier, the only information that you had as to
> this plaintiff was that he was a shareholder in the company.  You know that the
> company operated a restaurant, which closed in 2012.   So the only information that
> you had at the time, according to your proffers, was that he was a shareholder in a
> company that ceased operations at that location four years prior to the date on which
> you purportedly served him there.  What's the basis, counsel, for the assertion that
> that location was his actual—meaning at that time—was his actual place of business?

Jan. 31, Tr. at 16:5–20.  Ms. Lim acknowledged that she "could not provide any information for the

reason that [Troy Law] served him at the address and assuming [sic] that it was his usual place of

employment."  Jan. 31, Tr. at 16:21–23.  She rather incoherently insisted several times that Troy Law

assumed that because Ollie's to Go (the restaurant located at 2425 Broadway) and Trattoria Di Vino

(at 2427 Broadway) sometimes shared delivery workers, Mr. Kasner:

> also had—he might have some relationship with another restaurant.  So our
> assumption at that time was that he was—his actual business is not only the location
> at the restaurant that was already closed, but also the restaurant next to that
> restaurant.  So that's the reason that we served all defendant to a person who would
> accept service at the first restaurant.

Jan. 31, Tr. at 18:1–7.  Ms. Lim admitted, however, that the firm doubted the propriety of their

service on Mr. Kasner as early as 2018, at which point they began searching for another address at

which they could serve him.  *See* Jan. 31, 2020 Tr. at 19:25–20:9.  Still, Troy Law never attempted to

contact Mr. Kasner at his home in Florida before 2020, when the firm sent him a copy of the

Court's January 2, 2020 order to show cause for default judgment.  *See* Jan. 31, 2020 Tr. at 18:8–11,

20:9–10.

The Court asked counsel about Defendant Anthony Mazzola, another shareholder of Trattoria Di Vino against whom Plaintiffs were seeking default judgment.  After all, Mr. Troy had affirmed that he too had been served in August 2016 at Trattoria Di Vino.  According to Plaintiffs' complaint, Mr. Mazzola was another shareholder of the restaurant.  After another lengthy colloquy, Ms. Lim conceded that Troy Law's service to Mr. Mazzola and Mr. Kasner were not effective.  Jan. 31 Tr. at 32:23–33:2.  Indeed, Ms. Lim conceded that service on 2425 Broadway Chao Restaurant and Cho Kam Sze were similarly ineffective, because they had been served in 2016 at 2425 Broadway—the address where 2425 Broadway Chao Restaurant had operated between 2010 and 2015.  Jan. 31, 2020 Tr. 43:1–14, 44:3–7.  Ms. Lim could not articulate a reason why her firm had instructed the process server to serve those defendants there, even though the firm had admitted in its Rule 56.1 statement that in May 2015, another company began operating the Ollie's to Go Restaurant located at 2425 Broadway.  Rule 56.1 Statement, Dkt. No. 167 ¶ 179.

After Ms. Lim conceded that her firm had not properly served Defendants Mazzola, Kasner, Cho Kam Sze, or 2425 Broadway Chao Restaurant (—or, in her words, "there's some substantial issue regarding to [sic] the service of all defendants in this case," Jan. 31, Tr. 48:13–14—), the Court dismissed the claims against them pursuant to Federal Rule of Civil Procedure 4(m).  *See* Dkt. No. 280.  The Court also scheduled an evidentiary hearing to discuss the propriety of the service against the remaining defendants—specifically C.C. Wang, who Ms. Lim stated was served at his "usual place of abode" in 2016 in Queens, even though Plaintiffs also conceded that C.C. Wang had fled the country in 2015.  *See* Dkt. No. 277.  And because John Troy himself had signed his name on all of the relevant affidavits at issue, the Court asked that he personally attend the hearing.

### C.  The February 12, 2020 Hearing

In advance of the February 12, 2020 hearing, Mr. Troy submitted a short letter setting forth the support for his assertion that service on C.C. Wang in 2019 at his "usual place of abode" in

Flushing, Queens had been proper. *See* Dkt No. 278 at 1. Without citing any cases, he agreed that

"it is undisputed that Defendant Wang left the United States for Taiwan on or about May 2015, and

his last known address is at 4140 Union St, Apt 6D, Flushing, NY 11355-2502." Dkt No. 278 at 1.

But Mr. Troy explained that although C.C. Wang "revealed that he left the United States to escape

from his personal debts" he "never mentioned that he intended to abandon his life in the United

States and stay permanently outside the United States especially in Taiwan." Dkt No. 278 at 1. And:

> Because Defendant who used to own a cooperation [sic] and conducted in a business
> in a big city in the states for many years left for Taiwan merely to escape from his
> liability, it cannot be inferred that such person abandoned his life in this country or
> no longer maintained his usual place of abode within this country. Therefore, the
> service upon Defendant Wang is proper pursuant to Rule 4 of Federal Civil
> Procedure and Rule 308 of New York Civil Practice Law and Rules.

Dkt No. 278 at 1–2.

Mr. Troy and Aaron Schweitzer appeared on behalf of Plaintiffs at the February 12, 2020

hearing. Mr. Schweitzer reiterated that two pieces of evidence influenced their decision to serve

C.C. Wang in Queens, even though the firm knew he had fled to Taiwan and had been deposed

there in connection with the summary judgment proceedings in this case:

> That evidence consists of, first, the deposition transcript where it was asserted that
> Mr. Wang was located in China. He did not give his address—not in China—in
> Taiwan. He did not give his address in Taiwan. He did not represent that he was
> there permanently. He did represent that he was there for the purposes of avoiding
> debt collection. The second piece of evidence that we've submitted with our papers
> was a copy of a Lexis judgment search showing that a judgment had been entered
> against him at the place of the service of the third amended complaint in 2016 after
> Mr. Wang claimed to have relocated to Taiwan.
> THE COURT: Thank you. So, counsel, do I take it that that is the only evidence that
> you wish to put before the Court in support of a finding by the Court that the
> asserted service on him in Queens was proper?
> MR. SCHWEITZER: Yes, your Honor.

Feb. 12, 2020 Tr. 4:6–22.

Mr. Troy again admitted that he had no evidence that C.C. Wang had returned to the United

States after fleeing the country in 2015, but insisted that because C.C. Wang's "last known address"

was in Queens, it was still appropriate to have served him there:

> MR. TROY: Your Honor, maybe I'm—I probably don't because I think, if he—he
> did business in the United States and he leave over there, and even he left for
> somewhere, we don't know whether or not he's going to come back anytime, I think
> that's the last known address we can serve.
> THE COURT: Thank you. Is there any case or statute that you would like to point
> me to that supports the suggestion that you can effectively serve someone under
> Federal or New York law at their last known address even if you know that they
> have been out of the country consistently—since 2015 in this instance?
> MR. TROY: Your Honor, I don't have it, and I promise to the Court that I will look
> into the—you know, all the cases, to see if there is one.
> THE COURT: Thank you. Just to be clear. Did you not look at the law before you
> submitted your most recent letter to the Court?
> MR. TROY: Your Honor, we did, but we don't [sic] find anything.
> THE COURT: Thank you. Does that suggest anything to you that, having
> researched the question that you did not find any law supporting your position, does
> that suggest anything to you about the merit of your position?
> MR. TROY: Yes, your Honor. We think maybe our merit is not strong.

Feb. 12, 2020 Tr. 14:8–15:7. Indeed, Mr. Troy acknowledged that he or someone from his firm

instructed the process server in 2016 to serve C.C. Wang at his "actual place of business" at 2425

Broadway, and instructed a process service in 2019 to serve C.C. Wang at his "usual place of abode"

in Flushing, Queens, Feb. 12, 2020 Tr. 19:22–20:1, because, after all, that was "the only address we

can find," Feb. 12, 2020 Tr. 20:10–11.

After summarizing the case law, the Court concluded that there were insufficient indicia of

permanence to conclude that the Queens address was C.C. Wang's usual place of abode and

dismissed the case against him pursuant to Rule 4(m). *See* Feb. 12, 2020 Tr. 22:18–23:14. The Court

highlighted its concerns about the accuracy and truthfulness of Mr. Troy's remaining affirmations,

and the conduct of Mr. Troy and his firm during the course of this litigation, and warned counsel

that the Court was contemplating sanctions. Those sanctions, the Court explained, could take the

form of monetary sanctions, or may result in the dismissal of this case. *See* Feb. 12, 2020 Tr. 26:1–7.

### D.  The Order To Show Cause

After the hearing, the Court ordered Plaintiffs' counsel to show cause as to why they should not be sanctioned under Federal Rule of Civil Procedure 11 and the Court's inherent authority due to Troy Law's misrepresentations to the Court about the propriety of service on C.C. Wang.  *See* Dkt. No. 281.  Troy Law responded on February 18, 2020.  *See* Dkt. No. 282.

In Troy Law's response, the firm doubled-down on their theory that service on C.C. Wang was proper because it was actually made to "his usual place of abode because [John Troy] had a good-faith, if thin, basis that this was his usual place of abode to which he intended to return after escaping his creditors."  Dkt. No. 282 at 1.  In fact, Mr. Troy asserted that to his "knowledge on November 10, 2018, 2425 Broadway, New York, NY 10024 was Chao Ching Wang's place of business at August 11, 2016.  Declarant first learned otherwise on November 14, 2017."[2]  And "[b]ased on Chao Ching Wang's representations that he had fled to Taiwan for the purpose of escaping his creditors, and based on his many years of business in the United States, Mr. Troy sincerely believed that he 'intended to return' to his domicile at 41-40 Union Street, Apartment 6D, Flushing, NY 11355."  Dkt. No. 282 at 8.  Peculiarly, Mr. Troy then generally cited a Second Circuit case that discussed the method by which a district court had evaluated a party's citizenship to

---

[2] The basis for this representation is convoluted and frankly incredible.  For one, during discovery the firm admitted to learning that in May 2015 the T.Y. Wang Defendants took over operation of the restaurant from the previous owners, including C.C. Wang.  *See* Dkt. No. 282 at 7–8.  And in October 2017, T.Y. Wang was deposed and specifically noted that:  1); C.C. Wang was the previous owner, 2) C.C. Wang had fled the country in May 2015, and 3) C.C. Wang had handed T.Y. Wang the lease and the key to the restaurant when he had fled.  *See* Dkt. No. 282 at 8.  According to Mr. Troy, his associate Kibum Byun, though present at that deposition, "did not take notes of the answers to his deposition questions" and did not share that fact with any of the other attorneys at the firm.  Dkt. No. 282 at 8.  According to Mr. Troy, then, Mr. Troy could have only learned that 2425 Broadway was not C.C. Wang's actual place of business in November 2017 when he personally received the transcript of the deposition.  *See* Dkt. No. 282 at 8.  The Court has not been presented with any support for the proposition that an associate's failure to take notes at a deposition or convey material information to another lawyer on the case after the deposition excuses that second lawyer's lack of knowledge with respect to that information.

determine whether diversity jurisdiction existed.  *See* Dkt. No. 282 at 9 (citing *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)).

## II.      LEGAL STANDARD

The Court's power to impose sanctions is grounded in both statutory and inherent authority. "[The] authority to impose sanctions, is grounded, first and foremost, in our inherent power to control the proceedings that take place before this Court."  *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013).  Additionally, under Federal Rule of Civil Procedure 11, courts may sanction parties for making frivolous arguments.  *See Pentagen Techs. Int'l Ltd. v. U.S.*, 172 F. Supp. 2d 464, 470 (S.D.N.Y. 2001).

A court may impose Rule 11 sanctions *sua sponte* "after providing notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1); *see also id.* 11(c)(3); *Ransmeier*, 718 F.3d at 68. Imposing sanctions after a party is no longer able to withdraw or amend its challenged pleading requires a finding of subjective bad faith.  *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2nd Cir. 2003) (noting that where sanctions are "initiated by the District Court . . . long after [the party] had an opportunity to correct or withdraw the challenged submission . . . a 'bad faith' standard, applicable for contempt proceedings, is especially appropriate and is what the rule-makers contemplated."); *accord ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2nd Cir. 2009).

Rule 11 sanctions are appropriate where a person signs a filing for "an improper purpose such as to delay or needlessly increase the cost of litigation, or does so without a belief, formed after reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." *Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp., Inc.*, 28 F.3d 259, 264 (2d Cir. 1994).  "[I]n assessing a claim for Rule 11 sanctions, courts apply a standard of objective unreasonableness."  *Pentagen*, 172 F. Supp. 2d at 471 (quotations omitted).  Put differently,

"sanctions are appropriate only where 'it should have been patently obvious to any attorney who had familiarized himself [or herself] with the law' that the action was frivolous." *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017) (quoting *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988)).

"[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990). "Rule 11 mandates sanctions where it is clear that: (1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of success; and (3) no reasonable argument has been advanced as to extend, modify or reverse the law as it stands." *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir. 1989).

Similarly, "a district court has inherent authority to sanction parties appearing before in for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir. 1992). "This power stems from the very nature of courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *United States v. Int'l Broth. Of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 948 F.2d 1338, 1345 (2d Cir. 1991) (quotation omitted).

## III.   DISCUSSION

Sanctions are appropriate here under both Rule 11 and the Court's inherent authority.  Mr. Troy continuously asserted under oath that C.C. Wang was served at his usual place of abode in 2019, even though Mr. Troy was aware, at least by November 2017, that C.C. Wang had fled to Taiwan.  The Court raised its "substantial concerns" with respect to both the propriety of the service on C.C. Wang and Mr. Troy's affirmations to the Court in support of the application for default judgment during the January 31, 2020 conference.  Jan. 31, 2020 Tr. at 58:10–23.  And the Court

11

raised the possibility that some sanctions or penalties may be appropriate before even issuing the

order to show cause.  *See* Jan. 31, 2020 Tr. at 59:2–10.  Still, in Mr. Troy's response to the Court, he

asserted that he had a good faith basis for believing that the address in Queens was C.C. Wang's

usual place of abode because, as best the Court can tell, no one explicitly told him otherwise.

That is an insufficient basis for asserting that C.C. Wang was properly served.  It is clear that

Mr. Troy did no work to determine whether C.C. Wang's Queens truly represented his "usual place

of abode."  C.C. Wang was deposed in connection with this litigation in Taiwan on February 8,

2018.  My. Troy acknowledged that his associate, Kibum Byun, planned to ask C.C. Wang during the

deposition where he was currently living and whether he intended to return, but "confused the time

the deposition was supposed to start" and arrived "12 hours late."  Dkt. No. 282 at 9.  Another

lawyer had been present to take that deposition—Joseph M. Labuda of the Milman Labuda Law

Group—and had presumably been successful in noticing the deposition, because C.C. Wang

appeared for it.  But Mr. Troy did not ask that firm for C.C. Wang's contact information, nor did

they petition the Court to employ an alternative means of service.  Instead, Mr. Troy asserted that

his office

> was in something of a Catch 22—in order to make a demand under Local Rule 26.1
> for the address of his usual place of abode for service, we would need to serve him
> that demand, and if we could serve him the demand, we wouldn't need it.  We tried
> our best to search for a place of abode for Chao Ching Wang, but searching Taiwan
> for his usual place of abode was beyond our capability.  We found the address at 41-
> 40 Union Street, Apartment 6D, Flushing, NY 11355 by LEXIS search and noticed
> that a judgment had been entered at that address on August 10, 2016, more than a
> year after Chao Ching Wang was purported to have left for Taiwan and indeed only
> 1 day before the original Summons and Complaint were served at the Ollie's
> restaurant.  Trusting that the Clerk of Queens County had done its due diligence, we
> took 41-40 Union Street, Apartment 6D, Flushing, NY 11355 to be Chao Ching
> Wang's last known address.

Dkt. No. 282 at 9.  Mr. Troy never raised this issue with the Court, nor did he request permission to

use alternative means to serve C.C. Wang.  And Mr. Troy cited no law supporting the proposition

that his investigation was adequate, or that relying on the results of his LEXIS search permitted him

to claim that service in 2019 on C.C. Wang in Queens was proper.  He acknowledged that he was unable to find any law supporting this position and conceded that the merit of this argument was "not strong."  *See* Feb. 12, 2020 Tr. at 14:8–15:7.  But Mr. Troy forged ahead anyway, claiming that service was proper and requesting that the Court enter default judgment against C.C. Wang.

Existing precedent makes clear that, given this record, service at the Queens address was improper.  New York State law provides, in relevant part, that a person may be served:

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . [or] . . . by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . .

N.Y. C.P.L.R. § 308.  These requirements "must be followed strictly."  *Hoffman v. Igbodaro*, No. 16 Civ. 0155, 2016 WL 6093236, at * 4 (S.D.N.Y. Sept. 28, 2016), *report and recommendation adopted*, 2016 WL 6092706 (S.D.N.Y. Oct. 18, 2016).  "[T]he simple fact that [the defendants] obtained a copy of the . . . [summons and] complaint against [them] is insufficient for service to be deemed effective under New York law."  *Gerena v. Korb*, 617 F.3d 197, 202 (2d Cir. 2010).

True, C.C. Wang's flight to Taiwan does not necessarily mean the address in Queens could not be his usual place of abode.  A person can have more than one dwelling house or place of abode.  But for a location to qualify, it must contain "sufficient indicia of permanence."  *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d. Cir. 1991).  One way of finding sufficient indicia of permanence is looking to whether the party being served maintains a living space on the property.  For instance, in *Jaffe and Asher v. Van Brunt*, then-District Judge Sotomayor determined that service on a defendant who ordinarily resided in California but had been served at his parent's house in New York was proper, because the defendant "stay[ed] at that address when he [was] in the area,

maintain[ed] a private bedroom, clothes, and a phone line at the address," and "receive[d] mail" there.  158 F.R.D. 278, 280 (S.D.N.Y. 1994) (Sotomayor, J.); *see also 131 Main St. Assocs. v. Manko*, 897 F. Supp 1507, 1524 (S.D.N.Y. 1995) (finding indicia of permanence when, despite not having an ownership interest or paying rent on nephew's apartment, Defendant spent "most of his time" living there).  Listing the address as one's residence on one's drivers license or otherwise representing the address as one's own can also qualify as sufficient indicia of permanence.  *See Polygon Merch., Inc. v. New York Wholesale Co.*, No. 97 CIV 6489 (HB), 2000 WL 23287, at *2 (S.D.N.Y. Jan. 13, 2000) (finding that a property was the defendant's usual place of abode, as prior to service the defendant had listed the address as her residence on her driver's license, bank account, and vehicle registration); *see also Howard Johnson Int'l, Inc. v. Wang*, 7 F. Supp. 2d 336, 339–40 (S.D.N.Y. 1998), *aff'd*, 181 F.3d 82 (2d Cir. 1999) (finding that a defendant maintained a "dwelling house or usual place of abode" at a hotel because a licensing agreement that he signed noted that he lived at the hotel, his address was listed as that of the hotel in two phonebooks, and two of the defendant's employees acknowledged that he maintained a residence at the hotel).

Lawyers from Troy Law admitted that they had no information suggesting that the Queens address represented C.C. Wang's usual place of abode when they served him there, other than a judgment entered by a New York State Court at that address.  *See* Dkt. No. 282 at 9.  And Troy Law did not argue—much less advance a *reasonable* argument—that their assumptions that C.C. Wang would return should, as a matter of law, qualify as "sufficient indicia of permanence" to establish the Queens address as C.C. Wang's usual place of abode for the purpose of section 308.

The Court also finds many indicia that Mr. Troy and Troy Law advanced this argument in bad faith.  Mr. Troy admits in his February 18, 2020 letter of the numerous times he was warned that various attempts at service on many defendants in this litigation were likely improper.  *See, e.g.,* Dkt. No. 282 at 2 (T.Y. Wang's attorney notified Mr. Troy that service on T.Y. Wang at 2425 Broadway

was improper), 6–7 (Troy Law learned that WMK 89th Street LLC had been dissolved on October 11, 2016, failed to serve Mr. Mazzola at his actual place of abode even though the firm considered doing so, and still Mr. Troy affirmed in September 2019, Dkt. No. 229, that Mr. Mazzola had been served at his actual place of business).  Still, Mr. Troy made no attempt to confirm the Queens address was an appropriate place to serve C.C. Wang, and even obscured that fact in his affirmation, noting that C.C. Wang was served at "the aforesaid address" rather than his "usual place of abode." Dkt No. 253 at 2.  In contrast, Mr. Troy's affidavits about service on Mr. Kasner, Mr. Mazola, and Mr. Garcia, for example, were more specific, citing that those defendants were served at their actual places of business.  *See* Dkt. Nos. 229 at 2, 230 at 2, 231 at 2.[3]  Furthermore, as detailed above, counsel repeatedly advanced arguments that the Court specifically found meritless—specifically, that Troy Law could presume that C.C. Wang's usual place of abode was in Queens, when the firm knew that he had long since fled to Taiwan and had no evidence that C.C. Wang had ever returned or would ever return to the United States.  Thus, consistently asserting that C.C. Wang was properly served in 2019 at his usual place of abode was frivolous and merits Rule 11 sanctions.

For similar reasons, the Court finds that Troy Law's repeated assertions that service was proper with respect to C.C. Wang were in bad faith, and, if not otherwise punishable under Rule 11, warrant sanctions under the Court's inherent authority.  The Court's discovery of the extent of Troy Law's misconduct in this case was entirely due to Mr. Kasner's appearance contesting the default,

---

[3] These affidavits further support the Court's conclusion that what it otherwise may have generously called extraordinarily deficient legal and factual research is actually evidence of Troy Law's deliberate attempt to blindside the Court into granting default judgment against improperly served defendants.  Troy Law quickly moved to dismiss the case against Mr. Kasner and asserted that the Court could deny his motion as moot because, apparently, the firm had sued the wrong person.  *See* Dkt. No. 276 at 3.  The firm never engaged with the substance of Mr. Kasner's motion, and did not, before the Court probed the issue at the January 31, 2020 hearing, wrestle with the question of whether any of the defendants served at Trattoria Di Vino's former location were properly served.  Instead, the Court had to scour the docket to assure itself of its own jurisdiction once presented with facts calling into question the propriety of Troy Law's service, and the accuracy of Mr. Troy's affidavits in support of the firm's application for default judgment.

giving the Court reason (and contrary facts) to probe what was otherwise *prima facie* evidence of proper service and of its jurisdiction. *See Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) (per curiam).  Mr. Troy admitted in court that he was unable to find any law supporting this theory but nevertheless presented it to the Court.  In it of itself, this conduct may well fall within the ambit of sanctionable conduct.  Doing so in an *ex parte* application where no adversary is present to contest the factual and legal bases for any such assertion, easily clears that bar.  "Attorneys are officers of the Court, and our system of justice cannot operate efficiently if the Court cannot rely on the candor of counsel presenting an application for *ex parte* relief."  *Four Star Fin. Servs., LLC v. Commonwealth Mgmt. Assocs.*, 166 F. Supp. 2d 805, 807 (S.D.N.Y. 2001).

Failing to muster any factual or legal support for the assertion that a defendant was properly served, but nevertheless repeatedly presenting those arguments to the Court in an *ex parte* application for default judgment warrants sanctions under both Rule 11 and the Court's inherent authority—particularly on the facts here, which demonstrate that Troy Law failed to effective service properly on multiple occasions, while explicitly affirming that they had.  The only question that remains is what sanctions the Court ought impose.

## IV.   SANCTIONS

Having found that Troy Law's conduct violated Rule 11, the Court must determine the appropriate sanctions to impose.  The primary purpose of a sanction is to "deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).  The Rules imbue courts with significant discretion in determining what sanction, if any, should be imposed, so long as those sanctions are not more severe than necessary to accomplish deterrence.  *See Id.*

Troy Law has already played far too fast and loose with their ethical and professional responsibilities during the pendency of this litigation.  This Court is obliged to impose sanctions to "make it clear to all who practice in the federal courts that when they come before a Judge seeking

extraordinary relief *ex parte*, they will be held to the highest standards of candor." *Four Star Fin. Servs., LLC*, 166 F. Supp. 2d at 810.  Though the Court has spent many hours researching the extent of Troy Law's misrepresentations here, a sanction of $5,000, paid to the Court, will suffice to achieve Rule 11's deterrence objective.

## V.    CONCLUSION

In conclusion, the Court finds that a $5,000 sanction is appropriate to deter Troy Law—a repeat player in this district—from making similar misrepresentations to any court in an *ex parte* application in future.  This money is to be paid to the Court forthwith, and in no event any later than three weeks following the date of this opinion.  Troy Law is directed to file proof of payment on the docket no later than four weeks following the date of this opinion.

Should Troy Law wish to proceed with its default judgment application against the defendants remaining in this litigation, counsel should proceed by a new order to show cause no later than two weeks from the date of this opinion.

In any event, because C.C. Wang was not properly served within the timeframe required by Rule 4(m), and because there has been no application to extend that time, the claims against C.C. Wang are dismissed.  The Clerk of Court is directed to remove C.C. Wang's name from the caption of this case.

SO ORDERED.

Dated:  May 20, 2020

_____
GREGORY H. WOODS
United States District Judge